

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-21-2006

# Cruz v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 05-2764

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Cruz v. Atty Gen USA" (2006). *2006 Decisions.* Paper 788.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/788

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-2764

JOSE CRUZ,
Petitioner

v.

ATTORNEY GENERAL
OF THE UNITED STATES,
Respondent

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A45-867-307)

Argued March 7, 2006
Before: RENDELL and AMBRO, <u>Circuit</u> <u>Judges</u>,
and SHAPIRO, <u>District</u> <u>Judge</u>*

(Filed June 21, 2006)

---

* Honorable Norma L Shapiro, Senior District Court Judge for
the Eastern District of Pennsylvania, sitting by designation.

Regis Fernandez     **[ARGUED]**
18 Green Street
Newark, NJ  07102
   *Counsel for Petitioner*

Jonathan Potter     **[ARGUED]**
Michael P. Lindemann
John D. Williams
Lyle D. Jentzer
U.S. Department of Justice
Office of Immigration Litigation
Ben Franklin Station
P.P. Box 878, Civil Division
Washington, DC 20044
   *Counsel for Respondent*

-----

## OPINION OF THE COURT

-----

RENDELL, <u>Circuit Judge</u>.

Jose Cruz, a citizen of the Dominican Republic, was ordered removed from the United States based on his conviction for a "crime involving moral turpitude," as defined by the Immigration and Nationality Act ("INA").  The New Jersey Superior Court subsequently vacated the conviction supporting Cruz's removal order, and Cruz sought to reopen his immigration proceedings.  The Board of Immigration Appeals ("BIA") denied his motion to reopen on the grounds that it was untimely and this petition for review followed.

Normally, we could easily affirm a discretionary decision of the BIA denying a motion to reopen based upon untimeliness. In this case, there is no question that Cruz filed his motion out of time. Nor is there any question that the BIA treated Cruz's motion to reopen as a routine one in which the only issue was lateness. We find, however, that the current situation presents anything but a normal motion to reopen that lends itself to a straightforward analysis.

Cruz's motion to reopen is based on a single argument: because his conviction has been vacated, he is no longer subject to removal for committing a crime involving moral turpitude. The BIA has adopted, and we have previously upheld, specific guidelines for considering whether an alien remains "convicted" under the INA even after a court has vacated the alien's conviction. *Pinho v. Gonzales*, 432 F.3d 193, 209-10 (3d Cir. 2005); *In re Pickering*, 23 I. & N. Dec. 621, 624 (BIA 2003). In cases where the BIA has found an alien's conviction vacated for purposes of the INA, it has routinely considered this fact to be an "exceptional situation" that provides the basis for granting a motion to reopen *sua sponte*, without regard to the timing of the filing. Curiously, in this case, the BIA did not refer in any way to the distinctive aspect of Cruz's motion, namely, that a court had vacated his conviction. Nor did it refer to *Pickering*, let alone conduct an analysis under it as to whether Cruz remained "convicted" under the INA.

We conclude that the BIA should not have ignored the question of whether Cruz is still removable by virtue of his vacated conviction. Furthermore, we are not certain that we can address this issue ourselves because, under the INA, our jurisdiction to review a final order of the BIA is restricted when

3

an alien is removable by virtue of a conviction for moral turpitude. 8 U.S.C. § 1252(a)(2)(C). Thus, the scope of our jurisdiction depends on whether Cruz remains removable due to his vacated conviction. This case includes a further analytical wrinkle because the government contends that, even if Cruz is not "convicted" for immigration purposes, and our jurisdiction therefore not limited by § 1252(a)(2)(C), we lack the power to review the BIA's unfettered discretion to decline to reopen proceedings *sua sponte*. This last argument presents an additional layer of difficulty, but it is one that we ultimately need not explore.

Our jurisdiction is the threshold issue in this case, and it is one beyond which the BIA's opinion, by virtue of its failure to consider whether Cruz remains convicted for immigration purposes, prevents us from moving. Without the BIA's view as to whether Cruz still has the requisite "conviction" under the INA for his removal, we cannot determine our own jurisdiction. Principles of administrative law require us to remand this case to the BIA to give it the opportunity to apply *Pickering* in the first instance and to decide, based on the outcome of this analysis, whether it should exercise its *sua sponte* authority to reopen Cruz's case. Nonetheless, we write precedentially because we believe our analysis to be instructive.

## I. Facts and Procedural History

Jose Cruz is a native and citizen of the Dominican Republic who became a lawful permanent resident of the United States on June 15, 1997. On September 4, 1998, Cruz was

4

arrested in Union County, New Jersey for promoting prostitution. He pled guilty to the offense in 1999 and was sentenced to two years of probation, which he served without incident.

Near the end of 2001, Cruz traveled to the Dominican Republic to visit his family. Upon his return to the United States at Newark International Airport on March 4, 2002, immigration officials placed Cruz in removal proceedings, charging that he was inadmissible due to his conviction. Because there was no question that promoting prostitution is a crime of moral turpitude under the INA, or that Cruz had been validly convicted for this offense, the Immigration Judge ("IJ") ordered Cruz removed from the United States at a merits hearing on January 23, 2003. The sole basis for the removal order was Cruz's 1999 conviction. Cruz timely appealed the IJ's decision to the BIA.

Less than a month after the IJ issued its removal order, Cruz filed a petition for post-conviction relief in New Jersey Superior Court. Cruz alleged that the attorney who represented him in his 1999 criminal proceedings provided ineffective assistance of counsel. Specifically, Cruz claimed that his attorney failed to advise him that a guilty plea could lead to his deportation, though he was fully aware of Cruz's status as a non-citizen of the United States. Moreover, Cruz alleged that his attorney did not suggest that he apply for New Jersey's Pre-Trial Intervention program ("PTI"), though he was aware that, as a first-time offender charged with a nonviolent offense, Cruz would have been a good candidate for the program.

PTI permits criminal proceedings to be postponed while

5

a defendant completes a rehabilitation program. At the completion of this program, the charges against the defendant are dropped. Admission into PTI does not require the defendant to make an admission of guilt. *See Pinho*, 432 F.3d at 195 (outlining the details of PTI). Thus, PTI provided Cruz with a way of resolving the criminal charges against him without the adverse immigration consequences of a guilty plea. Cruz's petition for post-conviction relief requested that his guilty plea and sentence be set aside so that he could apply for admission into PTI.

On April 21, 2003, the Superior Court denied Cruz's application for post-trial relief, finding that Cruz's attorney had not provided ineffective assistance of counsel. The court believed that not pursuing PTI was a strategic decision, not a failure on the part of Cruz's attorney. Furthermore, because evidence showed that the Union County prosecutor would have blocked Cruz's admission into PTI even if he had applied, the court found that Cruz could not demonstrate that he was prejudiced by his counsel's allegedly deficient performance. Cruz appealed this decision to the Appellate Division of the Superior Court of New Jersey. However, on April 16, 2004, before Cruz's appeal was decided by the New Jersey courts, the BIA affirmed without opinion the IJ's removal order.

On June 15, 2004, two months after the BIA upheld Cruz's removal, the Appellate Division of the Superior Court of New Jersey affirmed the trial court's denial of post-conviction relief. Though the Appellate Division concluded that Cruz received deficient representation during his criminal proceedings, it denied his ineffective assistance claim because Cruz could not show he was prejudiced by his counsel's

6

deficiency. The court concluded that it was highly unlikely that Cruz would have been admitted into PTI in 1999, given the policies of the Union County prosecutor's office when Cruz was convicted. Thus, the outcome of Cruz's criminal proceedings would have been the same, even if Cruz's attorney performed competently.

Though Cruz lost his appeal in the Appellate Division, he hoped that the acknowledgment by a New Jersey appellate court that he received substandard representation would convince the new Union County prosecutor that he deserved to be admitted into PTI. Cruz was correct, and the prosecutor, who was different from the county prosecutor in office when Cruz was convicted, agreed to support Cruz's application for PTI. In a July 6, 2004 letter, the Union County prosecutor's office informed the PTI program that it backed Cruz's admission to the program. This letter alluded to three different reasons for why Cruz should have his conviction vacated and should be admitted into PTI: (1) he never had the opportunity to apply for PTI before, due to his attorney's deficient representation; (2) Cruz behaved well during his probation and in the time since; and (3) he was scheduled to be deported.[1]   Cruz was

---

[1]The letter states, in pertinent part:

> This is the case where the defense attorney . . . failed to advise Mr. Cruz of his right to apply for admission into the PTI Program. Subsequently, Mr. Cruz entered a plea of guilty and was placed on

7

subsequently admitted into PTI and, on September 24, 2004, a judge in the Superior Court of New Jersey vacated Cruz's guilty plea and conviction, subject to Cruz's successful completion of the PTI program.[2]

Immediately after his conviction had been vacated, Cruz requested a stipulation from Immigration and Customs

> probation. According to his probation officer . . . Mr. Cruz was a model probationer . . . . Mr. Cruz has not been in any trouble, of any kind, since he completed his term of probation, and has been working full-time.
>
> As you may also know, due to his conviction, Mr. Cruz is scheduled to be deported in the near future.
>
> Based upon all of the circumstances involved in this situation, Prosecutor Romankow has consented to Mr. Cruz's application into the Pre-Trial Intervention Program.

(App. 125.)

[2]Cruz successfully completed the PTI program and, on October 28, 2005, the Superior Court of New Jersey dismissed the "complaint, indictment, and accusation" against him.

Enforcement ("ICE") to reopen his proceedings before the BIA. ICE denied this request on February 10, 2005 and, eight days later, Cruz filed a motion to reopen his proceedings before the BIA. Among the materials that Cruz provided the BIA in support of his motion were (1) a copy of the New Jersey Superior Court order vacating his conviction, (2) a copy of his brief before the Appellate Division of the Superior Court, (3) the July 6, 2004 letter, referred to above, from the Union County prosecutor's office in support of Cruz's PTI application, and (4) an affidavit dated October 21, 2004 in which an assistant prosecutor in Union County stated that her decision to approve Cruz for PTI was "based strictly on the merits of his case." Cruz argued that his conviction had been vacated based on a defect in the underlying criminal proceedings, namely, his attorney's deficient representation. Cruz contended that, under *Pickering*, this meant that he was no longer "convicted" under the INA and therefore no longer removable. Consequently, his proceedings should be reopened "in the interest of justice and as a matter of due process."

The BIA denied Cruz's motion on May 3, 2005. Its order stated, in pertinent part:

> We find that the present motion must be denied because it is untimely. The motion was due on or before May 17, 2004, but it was not filed until February 18, 2005, so that it is more than 9 months late. *See* 8 C.F.R. § 1003.2(c)(2) (2004) (requiring motions to reopen to be filed generally within

9

> 90 days after the date on which the final administrative decision was rendered).
>
> We also find that the respondent has not demonstrated eligibility for any of the regulatory exceptions to the time and number restrictions on motions to reopen. *See* 8 C.F.R. § 1003.2(c)(3) (2004). Finally, we do not find that sua sponte reopening is warranted for any reason. *See Matter of J-J-*, 21 I. & N. Dec. 976 (BIA 1997); *see also Matter of G-D-*, 22 I. & N. Dec. 1132 (BIA 1999).

(App. 2.) Cruz timely petitioned for review of this decision on May 26, 2005.

## II. Legal Framework

Under the INA, conviction for a "crime involving moral turpitude" constitutes grounds for an alien's removal from the United States. *See* 8 U.S.C. § 1182(a)(2)(A)(i)(I) ("[A]ny alien convicted of . . . a crime involving moral turpitude . . . is inadmissible" and therefore "ineligible to be admitted to the United States."); *id.* § 1101(a)(13)(C) (establishing that an individual lawfully admitted for permanent residence who has been convicted of an offense involving moral turpitude is deemed to be a person seeking admission to the United States when reentering the country). Where an alien's conviction for

10

such a crime is later vacated, the question that arises is whether the alien nevertheless remains "convicted" for purposes of the INA. *See* 8 U.S.C. § 1011(a)(48)(A) (defining "conviction" under the INA).

The BIA has established that when a court with jurisdiction vacates an alien's conviction based on a defect in the underlying criminal proceedings, the alien no longer has a "conviction" under the INA. However, if a court vacates a conviction for reasons unrelated to the merits of the underlying criminal proceedings, such as for rehabilitation purposes or to avoid immigration hardships, the alien remains "convicted" for immigration purposes. *In re Pickering*, 23 I. & N. Dec. at 624. We have previously upheld this distinction, finding it to be a reasonable interpretation of the INA. *Pinho*, 432 F.3d at 209-10. In *Pinho*, we also established a "categorical test" for the BIA to apply in determining whether an alien is convicted for immigration purposes under *Pickering*:

> To determine the basis for a vacatur order, the agency must look first to the order itself. If the order explains the court's reasons for vacating the conviction, the agency's inquiry must end there. If the order does not give a clear statement of reasons, the agency may look to the record before the court when the order was issued. No other evidence of reasons may be considered.

11

*Id.*

An obvious consequence of *Pickering* is that a conviction that is vacated for immigration purposes may not provide the basis for an alien's removal. A motion to reopen is the proper means for an alien who has been ordered removed due to a conviction to challenge his removal after that conviction is vacated. *See Estrada-Rosales v. INS*, 645 F.2d 819, 821 (9th Cir. 1981) (granting motion to reopen where conviction that supported petitioner's deportation had been vacated based on defects in underlying proceedings); *Cruz-Sanchez v. INS*, 438 F.2d 1087, 1088-89 (7th Cir. 1971) (noting the BIA's position that the proper way to attack deportation based upon a subsequently vacated conviction is in a motion to reopen). Without this procedural tool, an alien could be removed even after he is no longer convicted for immigration purposes, a result that would conflict with the central holding of *Pickering*. Although the government did not bring this to our attention, our research has revealed that the Board has routinely been willing to overlook the untimeliness of an alien's motion to reopen when a conviction supporting a removal order is vacated and urged to be invalid under *Pickering*.[3]

---

[3]In ten unpublished opinions where the BIA found that convictions supporting removal orders either were or may have been invalid under *Pickering*, the Board has overlooked the untimeliness of an alien's motion and reopened proceedings based on its *sua sponte* authority under 8 C.F.R. § 1003.2(a). *See In re Urqilla-Morales*, A43 993 791, 2005 WL 3709278 (BIA Dec. 28, 2005) (unpublished); *In re Hernandez-Ruiz*, A92 319 174, 2005 WL 3709277 (BIA Dec. 28, 2005) (unpublished);

12

## III. Discussion

Congress has explicitly granted federal courts the power

*In re Ararao*, A23 127 203, 2005 WL 3802141 (BIA Dec. 2, 2005) (unpublished); *In re Hamidi*, A23 625 848, 2005 WL 3016092 (BIA Aug. 4, 2005) (unpublished); *In re Payne*, A41 189 506, 2005 WL 1848350 (BIA May 6, 2005) (unpublished); *In re Barreiro*, A13 309 994, 2005 WL 1111833 (BIA April 21, 2005) (unpublished); *In re Garcia-Avila*, A72 977 985, 2005 WL 1104564 (BIA Jan. 28, 2005) (unpublished); *In re Balogun*, A90 564 187, 2004 WL 2943504 (BIA Nov. 15, 2004) (unpublished); *In re Ojogwu*, A90 346 158, 2005 WL 1738967 (BIA May 25, 2004) (unpublished); *In re Meola*, A30 951 771, 2004 WL 1167123 (BIA Feb. 12, 2004) (unpublished); *see also In re Onochie*, A26 900 480, 2004 WL 1739205 (BIA July 16, 2004) (unpublished) (suggesting that BIA would have granted respondent's motion to reopen if not for precedent of the Court of Appeals for the Fifth Circuit contrary to *Pickering*). The parties have not identified, and we have not found, a single case in which the Board has rejected a motion to reopen as untimely after concluding that an alien is no longer convicted for immigration purposes. So long as an alien has not "slept on his rights" in bringing a vacatur under *Pickering* to the BIA's attention, the Board has granted untimely motions to reopen proceedings. *See In re Williams*, A38 200 976, 2004 WL 2374996 (BIA Sept. 17, 2004) (unpublished) (denying motion to reopen where conviction had been vacated two months *prior* to the time that the BIA had affirmed the removal order); *In re Ameh*, A74 887 925, 2004 WL 1059642 (BIA Jan. 2, 2004) (unpublished) (refusing to reopen where alien could have filed a timely motion to reopen but did not).

13

to review "any final order of removal" under 8 U.S.C. § 1252(a)(1). Implicit in this jurisdictional grant is the authority to review the denial of a motion to reopen any such final order. *Patel v. United States Attorney General*, 334 F.3d 1259, 1261 (11th Cir. 2003); *Chow v. INS*, 113 F.3d 659, 664 (7th Cir. 1997). There are, however, certain situations in which jurisdiction-stripping provisions of 8 U.S.C. § 1252(a)(2) limit or eliminate our jurisdiction to review denials of motions to reopen. *Durant v. INS*, 393 F.3d 113, 115 (2d Cir. 2005); *Assaad v. Ashcroft*, 378 F.3d 471, 474 (5th Cir. 2004); *Dave v. Ashcroft*, 363 F.3d 649, 652 (7th Cir. 2004); *Patel*, 334 F.3d at 1261.

For example, if an alien is removable for having committed one of the offenses enumerated in 8 U.S.C. § 1252(a)(2)(C), we lack jurisdiction to review a denial of a motion to reopen, except to the extent that it raises constitutional claims or questions of law. 8 U.S.C. §§ 1252(a)(2)(C)-(D); *McAllister v. Attorney General*, 444 F.3d 178, 183, (3d Cir. 2006).[4] Where § 1252(a)(2)(C) applies,

---

[4]Section 1252(a)(2)(C) provides in full:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), no court shall

14

factual or discretionary determinations fall outside the jurisdiction of the courts of appeals entertaining petitions for

> have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) or 1227(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section 1227(a)(2)(A)(ii) of this title for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 1227(a)(2)(A)(i) of this title.

The REAL ID Act, enacted on May 11, 2005, amended the INA by adding 8 U.S.C. § 1252(a)(2)(D), which states:

> Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

15

review. *Sukuwanputra v. Gonzales*, 434 F.3d 627, 634 (3d Cir. 2006). Two predicate facts are required for § 1252(a)(2)(C) to apply. First, the petitioner must be an alien. Second, the petitioner must be removable by reason of having been convicted of one of the offenses enumerated in § 1252(a)(2)(C). *Papageorgiou v. Gonzales*, 413 F.3d 356, 357 (3d Cir. 2005).

The government contends that both factual predicates for the application of § 1252(a)(2)(C) are present in this case because Cruz is an alien and he was ordered removed for committing a crime of moral turpitude. Since the BIA's decision to deny a motion to reopen is a discretionary determination that we review for abuse, *Borges v. Gonzales*, 402 F.3d 398, 404 (3d Cir. 2005), the government argues that § 1252(a)(2)(C) divests us of jurisdiction to review the BIA's decision. To the extent that we have jurisdiction under § 1252(a)(2)(D) to review for constitutional or legal error, the government claims that Cruz has raised no colorable legal issues in his petition for us to consider.

Cruz concedes that, because he is an alien, the first predicate fact required to apply § 1252(a)(2)(C) is present in this case. He contends only that the second factual predicate for the application of § 1252(a)(2)(C) – i.e., that he is removable by reason of having been convicted of an enumerated offense – is unsatisfied. Cruz argues that he is no longer removable for having committed an offense enumerated in § 1252(a)(2)(C) because the New Jersey Superior Court vacated his conviction based on a defect in the underlying criminal proceedings.

In order for us to decide whether § 1252(a)(2)(C) limits the scope of our jurisdiction here, we must determine whether

16

Cruz remains removable by virtue of his vacated conviction. We would analyze this issue under the standards set forth in *Pickering* and *Pinho*. If we conclude that Cruz is still convicted for immigration purposes, and therefore removable under the INA, we would review only the colorable legal or constitutional issues that Cruz raises. 8 U.S.C. § 1252(a)(2)(D). If, however, we find that Cruz is no longer "convicted" under the INA, § 1252(a)(2)(C) would not restrict our jurisdiction at all.

Unfortunately, the BIA's opinion frustrates our ability to reach any conclusion on this issue. The BIA's decision gives no indication that the Board considered whether Cruz remained convicted for immigration purposes after the New Jersey Superior Court vacated his guilty plea and conviction. The BIA did not analyze whether Cruz's conviction was vacated due to procedural or substantive defects in the underlying criminal proceedings; nor did it address whether the Superior Court vacated his conviction for rehabilitative purposes or to avoid the immigration consequences. The BIA did not cite *Pickering* or even mention the essential fact that Cruz's conviction has actually been vacated by the New Jersey courts. In short, the BIA's cursory analysis ignored the central argument in Cruz's motion to reopen that he was no longer removable for committing a crime of moral turpitude.

We must give the BIA the opportunity to clarify its opinion and address whether Cruz remains removable due to his vacated conviction. Principles of administrative law require that the BIA, not this Court, consider this issue in the first instance. *See INS v. Orlando Ventura*, 537 U.S. 12, 16-17 (2002) (remanding to give "the BIA the opportunity to address the matter in the first instance in light of its own expertise.").

17

Where a "matter requires determining the facts and deciding whether the facts as found fall within a statutory term," the BIA, not a court of appeals, should make the initial determination. *Gonzales v. Thomas*, 126 S. Ct. 1613, 1615 (2006). The BIA has not done so here.

Accordingly, the BIA must address whether Cruz remains convicted for immigration purposes, and is therefore removable under the INA, so that we may review its reasoning and benefit from the BIA's interpretation of its own precedent. "The agency can bring its expertise to bear; it can evaluate the evidence; it can make an initial determination; and in doing so, it can, through informed discussion and analysis, help a court later determine whether its decision exceeds the leeways that the law provides." *Ventura*, 537 U.S. at 17; *see also Partyka v. Attorney General*, 417 F.3d 408, 417 (3d Cir. 2005) (Alito, J., concurring) (arguing that case should be remanded to BIA to permit Board to apply its own ambiguous decisions). In our view, the facts of this case blur the clear distinction *Pickering* contemplates between convictions vacated due to defects in the underlying proceedings and those vacated for the purpose of rehabilitation or avoidance of adverse immigration consequences. Cruz's vacated conviction could reasonably be classified on either side of the line *Pickering* draws, and the BIA should make this determination before we do.

One might contend that, by denying Cruz's motion to reopen, the Board implicitly rejected Cruz's claim that he was no longer convicted for immigration purposes. However, such an implicit finding is not a substitute for the kind of analysis required for us to provide meaningful review of the BIA's decision. *See Smriko v. Ashcroft*, 387 F.3d 279, 297 n.12 (3d

Cir. 2004) (remanding to BIA despite the contention that BIA implicitly rejected petitioner's argument). Even if we were to assume that the BIA rejected the argument that Cruz's conviction had been vacated for immigration purposes, we could not affirm that determination without assuring ourselves that the Board had reached this conclusion in accordance with the categorical test we established in *Pinho*. The BIA's opinion gives no indication of whether the Board first examined the vacatur order for an explanation of why the Superior Court vacated Cruz's conviction and limited any further evidentiary review to the record that was before the Superior Court. *Pinho*, 432 F.3d at 219. Without "some insight into [the BIA's] reasoning," we will not independently determine whether Cruz remains convicted for immigration purposes. *Awolesi v. Ashcroft*, 341 F.3d 227, 232 (3d Cir. 2003).

Because we cannot determine based on the BIA's decision whether Cruz remains convicted for immigration purposes, and is therefore removable under the INA, we cannot resolve the question of whether § 1252(a)(2)(C) applies to this case.[5] Where a BIA opinion leaves the scope of our jurisdiction

---

[5]Cruz argues that, regardless of whether § 1252(a)(2)(C) applies, we have jurisdiction under § 1252(a)(2)(D) to consider the legal question of whether there was a proper basis to reopen his immigration proceedings. *See Pinho*, 432 F.3d at 216 (noting that BIA errs as a matter of law when it violates the requirements of *Pinho* and *Pickering*). Assuming that we have jurisdiction under § 1252(a)(2)(D) to consider whether Cruz remains convicted for immigration purposes, the BIA would still need to address this issue in the first instance. *See Thomas*, 126

19

in question, we will remand the case to the BIA for further consideration. *See Zhu v. Ashcroft*, 382 F.3d 521, 528 (5th Cir. 2004) (remanding to BIA where court could not determine its own jurisdiction based on the Board's opinion); *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003) (vacating BIA opinion where it "effectively prevents a reviewing court from knowing whether [the Board's decision] was reviewable or non-reviewable"); *Kayembe v. Ashcroft*, 334 F.3d 231, 238 (3d Cir. 2003) ("When deficiencies in the BIA's decision make it impossible for us to meaningfully review its decision, we must vacate that decision and remand so that the BIA can further explain its reasoning.").

The government argues that, regardless of our jurisdiction under § 1252(a)(2)(C), the BIA's order is unreviewable because it implicates the Board's unfettered discretion to reopen proceedings *sua sponte* under 8 C.F.R. § 1003.2(a). This regulation permits the Board "at any time [to] reopen or reconsider on its own motion any case in which it has rendered a decision." To make out a prima facie case for *sua sponte* reopening, an alien must show the presence of an "exceptional situation." *See In re G-D-*, 22 I. & N. Dec. 1132, 1133-34 (BIA 1999); *In re J-J-*, 21 I. & N. Dec. 976, 984 (BIA 1997). However, "[t]he Board has discretion to deny a motion to reopen even if the party moving has made out a prima facie case for relief." 8 C.F.R. § 1003.2(a). Because there is no standard governing the agency's exercise of discretion under 8 C.F.R. § 1003.2(a), we would lack jurisdiction to review BIA

S. Ct. at 1615. Because the Board did not do so, we would remand this case even under our § 1252(a)(2)(D) jurisdiction.

20

decisions not to reopen proceedings *sua sponte*. *Calle-Vujiles v. Ashcroft*, 320 F.3d 472, 475 (3d Cir. 2003).

Cruz responds that an exception applies here to the general principle that decisions wholly within an agency's discretion are unreviewable. If the BIA has restricted the exercise of its discretion by establishing a "general policy" of reopening *sua sponte* when an alien contends his conviction is vacated under *Pickering*, we would have jurisdiction to review the BIA's order. *See id.* ("It is true that if an agency announces and follows – by rule or by settled course of adjudication – a general policy by which its exercise of discretion will be governed, that exercise may be reviewed for abuse." (internal quotation omitted)). Cruz argues that the Board has consistently held that a conviction vacated for immigration purposes constitutes an "exceptional situation" under which proceedings must be reopened *sua sponte*, *see supra* note 3, and that we may thus review the Board's departure from that "settled course of adjudication" in the instant case.

Just as we cannot determine from the BIA's opinion whether § 1252(a)(2)(C) applies here, we also find it to be inconclusive on the issue of whether the BIA's decision not to reopen *sua sponte* in this case implicated its unfettered discretion. The BIA gave no indication that it considered Cruz's core argument for why his case should be reopened, but simply found that *sua sponte* reopening was not "warranted for any reason." We cannot tell from its opinion whether the BIA concluded that Cruz made out a prima facie case for *sua sponte* relief based on his vacated conviction, but nevertheless exercised its unreviewable discretion under 8 C.F.R. § 1003.2(a) to decline to reopen, or whether it believed that Cruz had not

21

shown an "exceptional situation," and was therefore ineligible because he failed to establish a prima facie case for *sua sponte* relief. In the latter instance, we would have jurisdiction to review the BIA's decision. *See Pinho*, 432 F.3d at 203-04 (distinguishing between unreviewable decision to grant discretionary relief and reviewable decision that alien is legally ineligible for discretionary relief). Thus, we are presented with a "jurisdictional conundrum" in that we have no way of knowing whether the BIA declined to exercise its *sua sponte* authority on a reviewable or non-reviewable basis. *See Zhu*, 382 F.3d at 528. Under such circumstances, we will remand for further explanation from the BIA. *Id.*; *Haoud*, 350 F.3d at 205.

Though we do not decide whether, as Cruz suggests, the BIA has established a "general policy" of reopening proceedings where a conviction is alleged to be invalid under *Pickering*, we are having difficulty squaring the BIA's cursory treatment of Cruz's predicament with its practice in every other case we have examined that presents the same issue. *See supra* note 3. While the unpublished BIA decisions we have consulted are not necessarily in the category of "selected decisions . . . designated to serve as precedents in all proceedings involving the same issue or issues," 8 C.F.R. § 1003.1(g), agencies should not move away from their previous rulings without cogent explanation. *See Johnson v. Ashcroft*, 286 F.3d 696, 700 (3d Cir. 2002) ("Although an agency can change or adapt its policies, it acts arbitrarily if it departs from its established precedents without 'announcing a principled reason' for the departure." (quoting *Fertilizer Inst. v. Browner*, 163 F.3d 774, 778 (3d Cir. 1998))); *Henry v. INS*, 74 F.3d 1, 6 (1st Cir. 1996) ("[A]dministrative agencies must apply the same basic rules to all similarly situated supplicants."); *Salameda v.*

22

*INS*, 70 F.3d 447, 450 (7th Cir. 1995) ("Agencies do not have the same freedom as courts to change direction without acknowledging and justifying the change."). Where there is a consistent pattern of administrative decisions on a given issue, we would expect the BIA to conform to that pattern or explain its departure from it. *Cf. Haoud*, 350 F.3d at 207 (remanding case to BIA for "fail[ure] to render a decision consistent with or fully explained as reasonably departing from its own precedent"). Should the Board determine on remand that Cruz is no longer "convicted" under the INA, we would expect it to reopen his proceedings despite the untimeliness of his motion, as it has routinely done in other cases where a conviction was vacated under *Pickering*, or at least explain logically its unwillingness to do so.

For the reasons set forth, we will grant the petition for review and remand the matter for further proceedings consistent with this opinion.