

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-24-2006

# Rojas Contreras v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4762

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Rojas Contreras v. Atty Gen USA" (2006). *2006 Decisions.* Paper 714.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/714

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-4762
_____

CLAUDIA MATILDE ROJAS-CONTRERAS,
                                                                                Petitioner

v.

ATTORNEY GENERAL  OF THE UNITED STATES,
                                                                                Respondent
_____

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A95-381-256)
Immigration Judge: R. K. Malloy
_____

Argued July 12, 2006
Before:  RENDELL, SMITH and CHAGARES, <u>Circuit</u> <u>Judges</u>.

(Filed July 24, 2006)
_____

Michael D. Gottsch
Daniel B. Scott     **[ARGUED]**
Chimicles & Tikellis
361 West Lancaster Avenue
One Haverford Centre
Haverford, PA 19041

Lisa A. Baird
924 Cherry Street, Suite 519
Philadelphia, PA 19107
    *Counsel for Petitioner*

Susan K. Houser   **[ARGUED]**
Kristin A. Cabreal
Richard M. Evans
Douglas E. Ginsburg
John M. McAdams, Jr.
U.S. Department of Justice
Office of Immigration Litigation
Ben Franklin Station
P.O. Box 878, Civil Division
Washington, DC 20044
  *Counsel for Respondent*

---

OPINION OF THE COURT

---

RENDELL, <u>Circuit Judge</u>.

Claudia Rojas-Contreras petitions for review of the decision of the Board of Immigration Appeals ("BIA") ordering her removal after denying her application for asylum, application for withholding of removal under the Immigration and Nationality Act ("INA"), and request for withholding of removal under Article 3 of the Convention Against Torture ("CAT"). For the reasons set forth below, we will grant the petition and remand to the BIA.

I.

Rojas-Contreras is a native and citizen of Colombia. She is a university educated bacteriologist who worked for fifteen years in that capacity at a clinic at Santa Clara Hospital. She is the mother of one son, who currently lives with his father in New York.

According to Rojas-Contreras' asylum application and her testimony at her asylum

2

hearing, she fled Colombia as a result of persecution by the Revolutionary Armed Forces of Colombia ("FARC").[1]  On October 26, 2000, while she was still living in Colombia, two individuals broke into her car and stole a folder containing documents, including her resume and certain bills.  The resume contained her home and work addresses and telephone numbers.

Following the break-in, on December 8, 2000, while she was at work at the hospital, Rojas-Contreras received a call on her cell phone from a caller who identified himself as a member of the 43rd Front of FARC.  The caller told Rojas-Contreras that FARC was hiring some health care professionals for its "mobile units."  App. 274.  The caller told Rojas-Contreras that FARC knew all about her and her son, and warned her not to try to communicate with anybody.  He instructed her that she would be called and that she would "have to fulfill our appointments."  *Id.*  While she did not report this incident to the police, Rojas-Contreras did report this call to her supervisor at the hospital, who arranged for someone to accompany her at night.

Fearing that her son might be harmed, Rojas-Contreras contacted her son's school to instruct that her son not be released to anyone but her, her brother, or her grandmother.  Upon contacting the school, she was informed that a female stranger posing as her relative had recently shown up at the school and attempted to take her son, but that the

---

[1]FARC is a terrorist organization responsible for the kidnaping, torture, and murder of thousands of civilians in Colombia.  *See* U.S. Department of State 2002 Country Report on Human Right Practices in Colombia, at 1-2.

3

school had not released her son to the stranger.

According to Rojas-Contreras, on December 15, 2000, in fear of the FARC, she left her apartment and went to live in her grandmother's home. On February 25, 2001, when Rojas-Contreras arrived home at her grandmother's house, two FARC members grabbed her by the arm and pushed her into a taxi. The two men forced Rojas-Contreras face-down on the taxi floor, insulting her and touching her abusively all over her body. They drove around with her for nearly an hour. They told her that they knew everything about her and her family, that she could not hide, that she had to obey them, and that next time she would not escape. They told her that next time she would pay with her life for her opposition to their ideology and her open political participation in the Colombian Conservative Party. One of the men made an incision on her left eyebrow and a second incision near her left eye with a penknife. The taxi slowed down to a near stop. The men, then, opened the door and pushed Rojas-Contreras out of the car. She received medical attention at Santa Clara Hospital.

According to Rojas-Contreras, she received a letter from the FARC on April 2, 2001, informing her that "she had been chosen to cooperate in our front on the Medical side of the armed fight, to be specific in the clinical laboratory." App. 302. The letter also instructed Rojas-Contreras that the FARC knew where she lived, where she worked, and where her son studied. The letter instructed her to meet a FARC operative at a specific place and time on April 15.

4

Rojas-Contreras fled Colombia and entered the United States on April 8, 2001. She entered the United States at Miami, Florida, as a nonimmigrant on a B-2 visa with authorization to remain in the United States for a period not to extend beyond November 7, 2001. On March 8, 2002, she filed an asylum application. On April 15, 2002, an asylum officer interviewed her regarding her asylum claim. On April 17, 2002, the asylum officer assessed Rojas-Contreras ineligible for asylum and referred her case to an Immigration Judge ("IJ").

On May 21, 2002, Rojas-Contreras appeared before the Immigration Court in Philadelphia. She conceded removability, but filed an application for relief, seeking asylum, withholding of removal, and protection under the CAT. On July 16, 2003, after an evidentiary hearing, the IJ issued an oral decision denying relief. The IJ found certain statements made by Rojas-Contreras to be incredible. The IJ held that Rojas-Contreras had not established that she suffered past persecution on account of any enumerated ground or that she would suffer future persecution on account of any enumerated ground. Rojas-Contreras timely appealed the IJ's decision to the BIA.

In considering Rojas-Contreras' appeal, the BIA rejected the IJ's credibility determination, noting that the IJ had based this finding of incredibility "largely on personal perceptions regarding how the respondent, FARC, and school officials should have behaved in the given circumstances." BIA Op. at 1, app. 2. The BIA nevertheless affirmed the decision of the IJ and dismissed the appeal, finding that Rojas-Contreras had

failed to establish that the FARC was "interested in her on account of a protected ground." *Id.* Specifically, the BIA held that it was not established that Rojas-Contreras' status as a health care professional qualified her as being part of a cognizable "social group" for purposes of 8 U.S.C. § 1101(a)(42)(A), and that there was insufficient evidence to establish that she had been persecuted based on her personal political views, or that the FARC was aware of these views. BIA Op. at 2, app. 3. Rojas-Contreras now brings this petition for review.

II.

The BIA had appellate jurisdiction to review the IJ's denial of Rojas-Contreras' application for asylum and request for withholding of removal pursuant to 8 C.F.R. § 1003.1(b). We have jurisdiction to review the BIA's final order of removal and denial of asylum and withholding of removal pursuant to 8 U.S.C. § 1252.

Where, as here, the BIA issues a decision on the merits and not simply a summary affirmance, we review the BIA's, and not the IJ's, decision. *Gao v. Ashcroft*, 299 F.3d 266, 271 (3d Cir. 2002). We must uphold the BIA's factual findings if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 480 (1992). We review the BIA's conclusions of law *de novo*, with appropriate deference to the agency's interpretation of the underlying statute in accordance with administrative law principles. *Wang v. Ashcroft*, 368 F.3d 347, 349 (3d Cir. 2004) (citing *Chevron U.S.A. Inc. v. Natural Res.*

6

*Def. Council, Inc.*, 467 U.S. 837, 844 (1984)).

III.

Rojas-Contreras challenges the BIA's decision denying her applications for asylum and withholding of removal. Specifically, Rojas-Contreras argues that the BIA erred in concluding that health care professionals in Colombia do not constitute a cognizable social group and that she had not been persecuted on account of her imputed or actual political opinion. She does not challenge the BIA's denial of her application for protection under the CAT. Given the BIA's reversal of the IJ's finding of adverse credibility, we will accept her testimony as credible. *See Lukwago v. Ashcroft*, 329 F.3d 157, 164, 167 (3d Cir. 2003) ("'Absent an explicit finding that a specific statement by the petitioner is not credible we are required to accept her testimony as true.'") (quoting *Hartooni v. INS*, 21 F.3d 336, 342 (9th Cir. 1994)).

IV.

To obtain a grant of asylum, an alien must demonstrate that she is a "refugee" within the meaning of 8 U.S.C. § 1101(a)(42). To succeed, an alien must show that she is a person who is unwilling or unable to return to her home country because of "[past] persecution or well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Thus, an alien may demonstrate that she qualifies for asylum because of past persecution or because she fears future persecution if returned to her native country.

7

However, the persecution, either past or future, must be motivated by one of the statutorily protected grounds. *Id.*

Rojas-Contreras contends that she qualifies as a refugee because she was persecuted on account of her membership in the "particular social group" of health care professionals in Colombia and on account of her political opinion regarding the FARC. She also claims she has a well-founded fear of future persecution by the FARC should she be returned to Colombia. The BIA did not deny that Rojas-Contreras was persecuted. Indeed, her statements were graphic on that point, describing her own kidnaping and physical assault, and the threat that her family would be harmed. But a demonstration by Rojas-Contreras of past persecution is not enough to qualify her for asylum. An applicant has the burden of showing that the persecution was *on account* of one of the enumerated statutorily protected grounds of 8 U.S.C. § 1101(a)(42)(A).

For purposes of 8 U.S.C. § 1101(a)(42)(A), the phrase "particular social group" means "a group of persons all of whom share a common, immutable characteristic." *Fatin v. INS*, 12 F.3d 1233, 1239 (3d Cir. 1993) (quoting *Matter of Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985)). This Court, in *Fatin*, accepted the BIA's further explanation of the phrase:

> The shared characteristic might be an innate one such as sex, color, or kinship ties, or in some circumstances it might be a shared past experience such as former military leadership or land ownership. The particular kind of group characteristic that will qualify under this construction remains to be determined on a case-by-case basis. However, whatever the common

8

characteristic that defines the group, it must be one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences.

*Matter of Acosta*, 19 I. & N. at 233 (quoted in *Fatin*, 12 F.3d at 1239-40). As we observed in *Fatin*, the BIA's construction is a permissible construction of the Immigration and Nationality Act and we are bound to accept it. *See Fatin*, 12 F.3d at 1240; *see also Wang*, 368 F.3d at 349 (citing *Chevron U.S.A. Inc.*, 467 U.S. at 844).

In order to qualify for withholding of removal or asylum based on membership in a particular social group, an alien must (1) identify a group that constitutes a "particular social group" as discussed above, (2) establish that she is a member of that group, and (3) show that she was persecuted or has a well-founded fear of persecution based on that membership. *Fatin*, 12 F.3d at 1240.

Rojas-Contreras argues that "health care professionals" in Colombia qualify as a "particular social group" because they "necessarily possess specialized knowledge and expertise– attributes that are innate and that shape their identities." Pet.'s Br. at 12. Medical knowledge is an "immutable" characteristic, she argues, because, even if she switched jobs, she would still have the medical knowledge and experience sought by the FARC. Moreover, Rojas-Contreras argues that clinical experience is the type of "shared past experience" that courts and the BIA have previously recognized as a basis for recognizing such a particular social group.

9

Typically, we defer to the BIA's reasonable interpretation of the INA. *See Fatin*, 12 F.3d at 1239 (citing *Chevron* 467 U.S. 837). However, in order for us to give deference, the BIA must have actually engaged in a reasoned interpretation of the statute. Here, had the BIA opined as to why it concluded that health care professionals were not a "particular social group" for purposes of 8 U.S.C. § 1101(a)(42)(A), that determination would be entitled to deference. However, the BIA engaged in no such interpretation, stating only that "it has not been established that either health care professionals or bacteriologists constitute a cognizable 'social group' within the meaning of the Act." BIA Op. at 2, app. 3. This cryptic statement falls far short of a determination that health care professionals are not a "social group," nor does it provide an analysis that is conducive to review.

The BIA's opinion thus "frustrates our ability to reach any conclusion on this issue." *Cruz v. Attorney General*, -- F.3d --, 2006 WL 1687393, *6 (3d Cir. 2006). The BIA did not analyze whether Rojas-Contreras' claim that health care professionals were a cognizable social group fit within the limits of § 1101(a)(42)(A), but merely observed that such a rule had not "been established." Because principles of administrative law require that this question be addressed by the BIA in the first instance, *see INS v. Ventura*, 537 U.S. 12, 16-17 (2002)**,** we will remand to give the BIA the opportunity to clarify its opinion, *see Cruz*, *supra,* at *6, and address whether Rojas-Contreras remains removable in light of her claim that she was persecuted on account of her membership in a particular

social group, "health care professionals."

V.

We also take issue with the BIA's assessment of the record regarding the FARC's knowledge of Rojas-Contreras' political opinion. An alien may obtain a grant of asylum if she can demonstrate that she has suffered past persecution, or because she has a well-founded fear of future persecution if returned to her country, on account of her political opinion, actual or imputed. *See* 8 U.S.C. § 1101(a)(42); *Chavarria v. Gonzalez*, 446 F.3d 508, 516 (3d Cir. 2006). "We will grant asylum to an otherwise qualified alien where the motives and perspective of the persecutor demonstrate that the persecution was on account of a belief attributable to the alien, even where the alien did not overtly subscribe to that belief." *Id.* An alien's testimony alone, where credible, may be sufficient to support a claim for asylum. *Id.*; *Gao*, 299 F.3d at 271.

On the issue of political opinion, having previously rejected the IJ's adverse credibility determination, the BIA stated: "There is no indication that the respondent ever articulated her personal political views to FARC, or that the members of FARC were otherwise aware of her political opinions." BIA op. at 2, app. 3.

This statement by the BIA disregards evidence of record. It is at odds with Rojas-Contreras' statement in her asylum application in which she recounts that her FARC kidnapers "told me I would pay with my life for my opposition to their ideology along with my open political participation in the Colombian Conservative Party." App. 275.

11

Clearly, Rojas-Contreras statement provides, at the least, *an indication* that members of FARC were aware of her political opinions.

As we observed in *Wu v. Ashcroft*, 393 F.3d 418, 425 (3d Cir. 2005), where an IJ or the BIA "finds a witness to be credible, but then renders a decision that is contrary to that testimony without explaining why, we cannot say at this point that such a decision is supported by substantial evidence." We will not speculate as to the reason for the inconsistency between the BIA's findings and the administrative record, but this inconsistency should be resolved if the findings of the agency are to be given deference. *See id.* Given what we perceive as an inconsistency between the findings of the BIA and the administrative record, we cannot find that the BIA's decision, with respect to whether Rojas-Contreras suffered persecution on account of her political opinions, actual or imputed, or has a well-founded fear of such future persecution is supported by substantial evidence. We will remand this case to the agency to make a determination of whether the record, when taken as a whole, supports Rojas-Contreras' claim for asylum on this basis.

## VI.

As we are remanding to the BIA for reconsideration of whether Rojas-Contreras has met the requirements of asylum, a fuller consideration of her eligibility for withholding of removal on these claims is also warranted on remand.[2] *See Lukwago*, 329

---

[2]The standard for withholding of removal is higher than, albeit similar to, the standard for asylum. *Lukwago v. Ashcroft*, 329 F.3d 157, 182 (3d Cir. 2003). As in the case of asylum, the applicant must show that she will be persecuted on account of one of the

F.3d at 182.

## VII.

For the foregoing reasons, we will grant the petition for review and remand to the

BIA for proceedings consistent with this opinion.

---

grounds enumerated in 8 U.S.C. § 1101(a)(42)(A). However, the applicant must also show that such future persecution is "more likely than not" to occur. *Id.*; 8 C.F.R. 208.16(b)(2). Because the BIA rejected these grounds as bases for asylum, it also declined to withhold removal for these claims.