

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-20-2007

# Doe v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1692

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Doe v. Atty Gen USA" (2007). *2007 Decisions.* Paper 29.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/29

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

<u>**NOT PRECEDENTIAL**</u>

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

————

No. 06-1692

————

JOHN DOE,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

————

On Petition for Review of an Order
of the Board of Immigration Appeals
Immigration Judge:  Hon. Eugene Pugliese

————

Argued December 10, 2007

Before:  SLOVITER, AMBRO, Circuit Judges, and RESTANI[*], Judge

(Filed: December 20, 2007)

————

Julia J. Peck      (Argued)
Daniel R. Margolis
Skadden, Arps, Slate, Meagher & Flom
New York, NY 10036

Steven J. Kolleeny
New York, NY 10036-6422
        Attorneys for Petitioner

_____

[*] Hon. Jane A. Restani, Chief Judge, United States Court of
International Trade, sitting by designation.

Richard M. Evans
Emily A. Radford
Aviva L. Poczter
Patricia A. Smith
Vanessa O. Lefort   (Argued)
United States Department of Justice
  Office of Immigration Litigation
Washington, D.C.  20044

        Attorneys for Respondent

Lena Ayoub
National Center for Lesbian Rights
San Francisco, CA 94102

        Attorney Amicus-Appellant

_____

OPINION

_____

SLOVITER, Circuit Judge.

John Doe, a native and citizen of Egypt, petitions for review of an order of the Board of Immigration Appeals ("BIA") denying his requests for withholding of removal under the Immigration and Nationality Act ("INA") and relief under the Convention Against Torture ("CAT").  The government moves the court to remand the petition to the BIA so that the BIA may address Doe's claim that the conditions for homosexual men in Egypt have deteriorated since Doe's departure from that country.

## I.

Doe entered the United States on a nonimmigrant visa on October 6, 2001, with authorization to remain until April 5, 2002. In March of 2003, Doe applied for asylum and withholding of removal under the INA and the CAT. On August 6, 2004, Doe appeared for a merits hearing on his application.

Doe claims that he was beaten on account of his homosexuality on two separate occasions while living in Egypt: once by his high school gym instructor because the teacher suspected he was gay and once by a police officer in a public park who saw Doe holding hands with, kissing and hugging his boyfriend. Both attacks resulted in lengthy hospital stays and further harassment. Doe then moved to Qatar, where he was beaten on three additional occasions and violently threatened on another, before he entered the United States in 2001. Doe claims that the Qatar incidents occurred after a former Egyptian classmate began to spread rumors that he was gay.

Doe testified that he retains an apartment in Egypt and visited his family on several occasions while living in Qatar, but that he continued to be harassed whenever he returned to Egypt. Moreover, Doe testified and introduced corroborating letters that his family notified him after his arrival in the United States that the authorities were looking for him and that he would be imprisoned if he returned to Egypt.

Scott Long, whom both parties accepted as an expert on the conditions for homosexuals in Egypt, also testified at Doe's hearing. Long testified that the incidents

reported by Doe, and his hesitance to report such incidents to the police, were consistent with the country's attitude towards homosexuals during the 1980s and 90s. Further, Long testified that "since 2001, there has been an ongoing crackdown on men who engage in . . . homosexual conduct." App. at 242. Long testified that hundreds of men have been arrested on account of their homosexuality and brutally tortured. Long also testified about the Queen Boat Trial, a successful government prosecution of over fifty homosexuals, which was heavily publicized in Egypt during 2001 and 2002. Long testified that individuals, including homosexuals, are subjected to torture within the Egyptian criminal justice system and that Doe could face arrest, and likely torture, merely by returning to Egypt following his significant residence abroad. A 2003 Department of State report on country conditions in Egypt, which corroborates much of Long's testimony, was also placed into evidence.

The Immigration Judge ("IJ") held that Doe's asylum claim must fail because he did not file for asylum within the one-year statute of limitations and did not demonstrate changed or extraordinary circumstances to excuse his delay. Doe does not seek review of this holding. The IJ also concluded that the incidents in Qatar were of little relevance to Doe's claims because he would be removed to Egypt rather than Qatar. The IJ found that the two incidents in which Doe was beaten in Egypt did not constitute torture. Moreover, the IJ concluded that Long's testimony regarding the hundreds of gay men arrested in Egypt did not compel a conclusion that it was more likely than not that Doe would be

4

tortured upon his return to Egypt. Because Doe has not lived in Egypt since 1989, the IJ issued an adverse credibility finding regarding Doe's assertion that the police were looking for him at present. Therefore, the IJ rejected Doe's CAT claim. The IJ also concluded that Doe was not entitled to withholding under the INA because he had not corroborated his homosexuality or his past abuse, and he had continued to visit Egypt after his alleged persecution.

The BIA adopted and affirmed the IJ's decision. The BIA disagreed that Doe did not corroborate his homosexuality, and instead stated that "there is enough evidence in the record to establish this fact." App. at 3a. However, the BIA held that Doe's isolated incidents of harassment in Egypt did not amount to persecution and that the incidents in Qatar did not have bearing on his application for withholding of removal to Egypt. The BIA concluded that Doe's several return visits to Egypt undermined his claims, and questioned the validity of Doe's assertion that he is currently being sought by the police. Ultimately, the BIA agreed with the IJ that Doe had not met his burden of proving that it is more likely than not that he would be persecuted or tortured in Egypt on account of his homosexuality, and thus denied his requests for withholding of removal under the INA or the CAT.

Doe filed a petition for review, challenging the BIA's determination that he was not entitled to withholding of removal under either the INA or the CAT. The government then filed a motion asking this court to remand Doe's petition to the BIA so that the BIA

may address his claim that conditions for homosexual men in Egypt have deteriorated since 2001. Doe agreed that both the IJ and BIA failed to adequately consider that evidence but opposed the remand motion, contending that the BIA's decision contained a number of other interrelated errors such that this court may finally dispose of his petition. When this court declined to immediately grant that motion, the government reiterated its position that a remand is appropriate. The government has not otherwise addressed the grounds of Doe's petition. We have jurisdiction over the petition under 8 U.S.C. § 1252.

## II.

The government recognizes that there is objective evidence in the record that the conditions for homosexual men in Egypt may have deteriorated since Doe left that country. The government argues that this change in conditions is material to Doe's claims for withholding of removal and CAT protection, that neither the BIA nor the IJ has properly considered that issue, and that thus the agency should evaluate the issue in the first instance. Doe counters that the undisputed record evidence and the government's failure to otherwise oppose his petition demonstrate his entitlement to withholding of removal, and thus we should reverse the BIA's decision, rather than remand for further proceedings. Alternatively, Doe asks us to vacate and remand the BIA's decision in its entirety.

The Supreme Court has stated that "[g]enerally speaking, a court of appeals should

6

remand a case to an agency for decision of a matter that statutes place primarily in agency hands." INS v. Ventura, 537 U.S. 12, 16 (2002). This not only ensures that primary decision-making authority is vested in the agency with expertise in a given field, but also provides for the creation of a record to aid the reviewing court's analysis. Id. at 17. Therefore, courts should be hesitant to "create[] potentially far-reaching legal precedent . . . without giving the BIA the opportunity to address the matter in the first instance in light of its own expertise." Id.

It is uncontested that the record contains evidence of deteriorating conditions for homosexuals in Egypt. In its decision affirming the IJ's removal order, the BIA summarily stated that it had reviewed the record. However, the BIA did not make any findings regarding those conditions or their effect on Doe's request for withholding of removal under the INA and the CAT. Thus, even if we could reverse, a disposition questionable in light of Ventura, we cannot meaningfully review the BIA's decision where it failed to address key evidence or adequately explain the basis of its decision. See Cruz v. Attorney General, 452 F.3d 240, 248-49 (3d Cir. 2006). Accordingly, reversal of the IJ's decision with an instruction to grant Doe's request for withholding is not appropriate on the basis of the record currently before us.

In the absence of reversal, then, the parties agree that the petition should be remanded to the BIA. They only contest the scope of our review prior to remand. We decline to fracture our review of the BIA's decision by addressing the remaining grounds

7

of Doe's petition at this time.  In its brief, the government states that "remand serves the interests of both the parties and the judiciary when the disposition of a petition for review may benefit from further investigation or consideration by the Board."  Respondent's Br. at 25.  We see no reason to fracture the remand so that only the changed circumstances for homosexual men in Egypt is before the BIA.  Instead, on remand the BIA should consider all of the remaining issues presented in Doe's petition for review.[1]

## III.

For the above-stated reasons, we will vacate the decision of the BIA and remand for further proceedings consistent with this opinion.

---

[1] In addition to arguing that certain of the BIA's factual findings were clearly erroneous, Doe argues that the BIA improperly applied the legal standards governing his claims, and thus remanding his petition without further instruction is unlikely to affect the ultimate resolution of his claims.  For instance, Doe argues that the BIA failed to analyze his CAT claim as distinct from his withholding claim under the INA, and thus allowed its adverse credibility determination to bleed into what should be an entirely objective analysis under the CAT.  See Zubeda v. Ashcroft, 333 F.3d 463, 476 (3d Cir. 2003). However, we do not presume that the BIA will make legal errors upon its reconsideration of Doe's claims, and anything we would say in that connection would be a purely advisory opinion.