

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-29-2009

# Wasim Makanast v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-3031

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Wasim Makanast v. Atty Gen USA" (2009). *2009 Decisions.* Paper 1283.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1283

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-3031
_____

WASIM MAKANAST,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A72-564-472)
Immigration Judge: Honorable Annie S. Garcy

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 27, 2009

Before: BARRY, SMITH and HARDIMAN, <u>Circuit Judges</u>

(Opinion Filed : May 29, 2009 )
_____

OPINION
_____

PER CURIAM

Wasim Makanast petitions for review of the Board of Immigration Appeals'

("BIA") order denying a motion to reopen his removal proceedings. For the following

reasons, we will deny his petition.

At issue on this petition is the date on which Makanast filed a motion to reopen his removal proceeding on the basis of his marriage to a United States citizen. By way of background, Makanast is a native and citizen of Jordan who overstayed his visitor-for-pleasure visa. He applied for asylum and other forms of relief, alleging that he faces persecution if removed to Jordan because he is of Kurdish descent, has been "Americanized," and does not speak Arabic well. His brother, Shirkou Makanast, sought the same relief on the same grounds, and their cases were consolidated before an Immigration Judge ("IJ"). The IJ denied relief, and the BIA dismissed their consolidated appeals on January 17, 2006, though it granted Makanast leave to voluntarily depart within 60 days. Neither brother petitioned for review.

On March 4, 2006, Makanast married a United States citizen. On March 14, 2006, his wife filed with the Department of Homeland Security ("DHS") an I-130 visa petition on his behalf, and Makanast filed an I-485 application for an adjustment of status to permanent resident. Both Makanast and his brother had been represented by the same counsel, Iskender Cemaletin, before the IJ and on appeal to the BIA. These filings, however, were made by Shirley Tang of the firm Parsekian & Solomon. Makanast claims that, on March 17, 2006, Ms. Tang also filed on his behalf a motion to reopen with the BIA on the basis of those applications, seeking a remand to the IJ to allow him to adjust his status. The BIA has no record of such a motion.

Instead, the record shows that, on April 14, 2006, Mr. Cemaletin filed separately on behalf of each brother a motion to reopen on the basis of changed country conditions. (A.4-19, 842-54.) In connection with those motions, the record contains separate EOIR-27 appearance forms for Mr. Cemaletin on behalf of each brother. (A.6-7, 841-42.) The record also contains Makanast's own affidavit in support of his separate motion to reopen. (A.857-58). The BIA denied Makanast's motion on May 18, 2006, and his brother's motion on July 31, 2006, concluding in each case that they had not shown changed country conditions or prima facie eligibility for relief. Once again, neither brother petitioned for review.

On December 5, 2007, Makanast filed the motion to reopen at issue here. He filed this motion through a different lawyer at Parsekian & Solomon and characterized it as a "refiled" version of the motion he claims to have filed through Parsekian & Solomon on March 17, 2006. The "refiled" motion asserts that Parsekian & Solomon contacted the BIA to ascertain the status of that motion on November 30, 2007 (over one year and eight months after counsel claims to have filed it) and learned only then that the BIA had no record of having received the motion. Makanast argued that the BIA must have received the motion on March 17, 2006, but that someone within the BIA must have lost it or confused it with his brother's motion (Parsekian & Solomon appears to have been unaware that Mr. Cemaletin actually filed a motion on Makanast's behalf as well). As support, he attached, among other things: (1) copies of the original cover letter, motion,

3

filing fee check, and entry of appearance, each dated March 16, 2006 (A.764-771); (2) copies of the I-130 and I-485 applications on which the motion was based, together with a DHS receipt for the filing fees for those applications dated March 16, 2006 (A.782-821); (3) a Federal Express receipt documenting delivery of a package from Parsekian & Solomon to the BIA on March 17, 2006 (A.823); and (4) a time-stamped copy of the motion cover letter showing receipt by DHS counsel that same day (A.825).

The BIA denied the "refiled" motion on June 26, 2008. The BIA concluded that the motion was both untimely (because Makanast had not filed it within 90 days of the BIA's denial of his appeal) and number-barred (because Makanast already had filed the motion for reopening through Mr. Cemaletin that the BIA denied on May 18, 2006). See 8 C.F.R. § 1003.2(c)(2). The BIA acknowledged Makanast's argument regarding the filing date, but explained that it had no record of having received the motion before, that it did have Makanast's other motion filed by different counsel within the same relative time frame, and that the Federal Express receipt does not identify the contents of the package delivered to the BIA from Parsekian & Solomon on March 17. The BIA also declined to exercise its authority to reopen sua sponte. Makanast petitions for review.[1]

---

[1] Makanast does not challenge his underlying order of removal or the BIA's denial of the motion to reopen filed through Mr. Cemaletin, and we lack jurisdiction to review them because Makanast did not (timely or otherwise) petition for review of either one. See Stone v. INS, 514 U.S. 386, 405 (1995). Makanast also does not challenge the BIA's refusal to exercise its discretion to reopen sua sponte, which we likely would lack jurisdiction to review as well. See Cruz v. Att'y Gen., 452 F.3d 240, 249 (3d Cir. 2006).

4

II.

We have jurisdiction under 8 U.S.C. § 1252.  See Liu v. Att'y Gen., 555 F.3d 145, 148 (3d Cir. 2009).  We review the BIA's denial of a motion to reopen for abuse of discretion, and will disturb it only if the ruling was "'arbitrary, irrational, or contrary to law.'"  Zheng v. Att'y Gen., 549 F.3d 260, 265 (3d Cir. 2008).  In conducting this review, "we uphold the BIA's factual findings if they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole'" and may reject them "only if 'any reasonable adjudicator would be compelled to conclude to the contrary.'"  Liu, 555 F.3d at 148 (citations omitted).  The deferential abuse of discretion standard applies because "'[m]otions for reopening of immigration proceedings are disfavored[.]'"  Korytnyuk v. Ashcroft, 396 F.3d 272, 293 n.27 (3d Cir. 2005) (citation omitted).[2]

The only matter at issue is the date on which the BIA should have deemed Makanast's motion based on his marriage to be filed.  If the BIA permissibly treated it as first filed on December 5, 2007 (the date of its purported "refiling"), then the BIA's denial of the motion as untimely and number-barred was not an abuse of discretion and Makanast does not argue otherwise.  See 8 C.F.R. § 1003.2(c)(2).  If, on the other hand, the BIA should have treated the motion as filed on March 17, 2006 (the date on which

_____

[2]  Makanast argues that we should review the BIA's factual findings under the "clearly erroneous" standard that generally governs our review of findings by the district courts.  As explained above, however, we instead review the BIA's findings under the substantial evidence standard, which is "'even more deferential' than the 'clearly erroneous' standard."  Reynoso-Lopez v. Ashcroft, 369 F.3d 275, 278 (3d Cir. 2004).

5

Makanast claims to have first filed it), then it would be timely and would constitute Makanast's first motion to reopen, and the BIA would have been obligated to rule on its merits.[3]

We conclude that the BIA did not err in treating the motion as first filed on December 5, 2007. Makanast argues that the BIA should have concluded that it actually received the motion on March 17, 2006, and that someone either misplaced it or otherwise failed properly to process it. According to Makanast, the evidence he presented to the BIA makes this "the most reasonable explanation." Even if we were inclined to agree, however, our standard of review does not permit us to disturb the BIA's ruling on the basis of our view of the "most reasonable explanation." Instead, as explained above, we review the BIA's ruling only for abuse of discretion, and may disturb its findings of fact unless the only reasonable explanation is to the contrary.

That is not the case here. Out of Makanast's evidence, the only item potentially showing that the BIA received his motion on March 17, 2006, is the Federal Express receipt. The BIA acknowledged that receipt, but correctly explained that it contains no "identifying information . . . which would connect [it] to the respondent's motion." (BIA

---

[3] Makanast sought reopening solely to allow him to adjust his status in light of his marriage to a United States citizen. The Government argues that he is statutorily ineligible to adjust his status because he failed to depart within his voluntary departure period. See 8 U.S.C. § 1229c(d)(1)(B); 8 U.S.C. § 1255. The BIA did not address that issue, so we may not do so in the first instance. See Cruz, 452 F.3d at 248. We note, however, that Makanast has not disputed the Government's argument.

Dec. at 2.)  In other words, the BIA correctly noted that the Federal Express receipt does not show that it received Makanast's motion, as opposed to something else from Parsekian & Solomon, on March 17.  Thus, its decision is adequately grounded in the record, and we cannot say that it was "'arbitrary, irrational, or contrary to law.'" Zheng, 549 F.3d at 265.[4]

On a final note, Makanast argued before the BIA that the BIA must have confused the motion purportedly filed by Parsekian & Solomon on March 17, 2006, with the motion to reopen filed by Mr. Cemaletin on behalf of Makanast's brother.  That argument was based on counsel's erroneous belief that Mr. Cemaletin had not also filed a motion on behalf of Makanast himself, and the BIA devoted much of its order to addressing that issue.  Makanast now concedes that Mr. Cemaletin filed a motion on his behalf and argues instead that Mr. Cemaletin was not authorized to do so.  Makanast did not exhaust that issue before the BIA (and, as a consequence, the record contains no evidence in support of his assertion), so we lack jurisdiction to address it.  See Lin v. Att'y Gen., 543

---

[4] We acknowledge both that Makanast made a fairly compelling circumstantial showing and that the BIA did not specifically address all of the evidence he submitted. There is no dispute that, two days before he claims to have filed his motion with the BIA, Parsekian & Solomon filed the applications on which the motion was based.  There also is no dispute that counsel for the Government received a copy of the motion from Parsekian & Solomon on March 17, 2006.  Thus, one might expect the package delivered from Parsekian & Solomon to the BIA on that same date to have contained a copy of the motion as well.  The record, however, does not compel that conclusion.  Nor do we perceive any error in the fact that the BIA did not specifically address all of Makanast's evidence.  The BIA's discussion of the Federal Express receipt reflects adequate engagement with the record, and Makanast himself does not argue otherwise.

F.3d 114, 119-20 (3d Cir. 2008).

In any event, that issue is not relevant to our disposition. As explained above, the only relevant issue is whether the BIA was required to treat Makanast's motion to reopen through Parsekian & Solomon as filed on March 17, 2006. If so, that motion would have been his first regardless of the motion that Mr. Cemaletin filed on April 14, 2006. Moreover, because we may not disturb the BIA's decision to treat the Parsekian & Solomon motion as filed instead on December 5, 2007, that motion is untimely whether Mr. Cemaletin was authorized to file a motion to reopen on behalf of Makanast or not.

Accordingly, we will deny the petition for review.