Avni JAHJAGA, Petitioner,

v.

ATTORNEY GENERAL OF
the UNITED STATES,
Respondent.

Goce Gjeroski, Petitioner,

v.

Attorney General of the United
States, Respondent.

Nos. 06–2866, 06–3466.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit L.A.R.
34.1(a) Nov. 28, 2007.

Opinion Filed: Jan. 4, 2008.

Joshua E. Bardavid, New York, NY, John D. Perez, Perez, Perez & Perez, Newark, NJ, for Petitioner.

[Gvt] Emily A. Radford, Bryan S. Beier, Aviva L. Poczter, Patricia A. Smith, [Gvt] Jesse L. Busen, Richard M. Evans, Joan E. Smiley, Robbin K. Blaya, United States Department of Justice, Office of Immigration Litigation, Thomas H. Dupree, Jr., United States Department of Justice, Civil Rights Division, Washington, DC, for Respondent.

Before: BARRY, FUENTES, and GARTH, Circuit Judges.

## OPINION

GARTH, Circuit Judge:

The appeals which we review here involve two fundamental issues: (1) do we have jurisdiction to review the Board of Immigration Appeals' ("BIA") denial of a motion to reissue its decision; and (2) what is the effect of an alien's claim that the BIA's decision, which was purportedly mailed to the last address of record, was never received by the alien. We have yet to decide these issues, which affect the ability of an alien to seek legal redress before being deported from this country. We will grant the petitions and remand both cases to the BIA with instructions consistent with our ruling today.

## I.

### A.

Petitioner Avni Jahjaga ("Jahjaga") is a citizen of Kosovo who claimed political persecution. After an Immigration Judge ("IJ") denied his applications for asylum, withholding of removal, and relief under the Convention Against Torture, he appealed to the BIA. On February 22, 2005, the BIA affirmed the IJ's decision. Jahjaga then filed a motion to reopen his proceeding, which the BIA denied on August 17, 2005. Jahjaga contends that neither he, nor his attorney, received the BIA's August 17 decision until it was mailed to his counsel on November 1, 2005. Jahjaga accordingly argues that his motion to reconsider, which was filed with the BIA on November 30, is timely because it was filed within 30 days of the date of the order's mailing on November 1. *See* 8 C.F.R. § 1003.2(b)(2). As a result of actions taken by Jahjaga's counsel in writing to the BIA in September and responding to the BIA's October order denying reissuance, we assume without deciding that the motion was timely.

On May 1, 2006, the BIA denied Jahjaga's motion to reconsider. The BIA held that the motion was untimely as Jahjaga failed to file it within thirty days of August 17, 2005. Jahjaga then petitioned this Court for review.

### B.

Petitioner Goce Gjeroski ("Gjeroski") is a native of Macedonia and essentially claimed that his coerced military service by Macedonia qualified him for relief. An IJ denied his applications for asylum, withholding of removal, and protection under the Convention Against Torture on September 7, 2004. The BIA affirmed the IJ on December 28, 2005. As in Jahjaga's case, the Government claims the BIA mailed the decision by regular mail to Gjeroski's counsel at the address on record. Gjeroski's counsel claims he never received the decision.

Gjeroski contends he only learned of the BIA's decision after receiving a Notice to Surrender for removal on May 16, 2006. Gjeroski then filed a motion asking the BIA to reissue the December 28, 2005 decision so he could file a timely petition

with this Court for review. The BIA denied this motion on June 20, 2006. In its opinion, the BIA essentially provided the same reasons as it expressed in Jahjaga's case for denying Jahjaga's motion, stating: "the decision was mailed to the address provided by counsel on a Notice of Entry of Appearance before the Board" and that "there is no error attributable to the Board in the service of its decision to counsel."

### C.

Because both appeals require us to address the same two questions of our jurisdiction and the alien's failure to receive the BIA's decision ordering removal, on November 16, 2007, we consolidated Jahjaga's and Gjeroski's petitions for the purpose of disposition.

### II.

■ We first address our jurisdiction to review the BIA's denial of petitioners' motions to reissue. The Government argued initially that the denial of a motion to reissue a decision of the BIA is not a final order over which we have jurisdiction. However, Congress granted federal courts the ability to review a "final order of removal," subject to certain exceptions. *See* 8 U.S.C. § 1252(a)(1), (2). We treat a motion to reissue as a motion to reopen. *See Tobeth–Tangang v. Gonzales,* 440 F.3d 537, 539 n. 2 (1st Cir.2006); *Singh v. Gonzales,* 469 F.3d 863, 865 n. 4 (9th Cir.2006). The denial of a motion to reopen is itself a final order of removal. *See Cruz v. Att'y Gen.,* 452 F.3d 240, 246 (3d Cir.2006). Therefore, we have jurisdiction to review a denial of a motion to reissue a BIA opinion as long as none of the exceptions apply— as none does here.

Moreover, the Government also argued that the jurisdiction-stripping provision of 8 U.S.C. § 1252(a)(2)(B)(ii) deprived us of the ability to review the BIA's decisions because they were discretionary, and thus barred judicial review. This provision provides that:

> [N]o court shall have jurisdiction to review ... any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is *specified under this subchapter* to be in the discretion of the Attorney General or the Secretary of Homeland Security.

8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added).

The operative phrase here is "specified under this subchapter." We previously held that the exceptions are enumerated in the relevant statutes, 8 U.S.C. §§ 1151–1378. *Khan v. Att'y Gen.,* 448 F.3d 226, 230 (3d Cir.2006); *Urena–Tavarez v. Ashcroft,* 367 F.3d 154, 158 (3d Cir.2004). Motions to reissue are not listed under this subchapter.

■ We have held in *Khan* that, in the absence of statutory authority prescribing the BIA's discretionary power, there is a strong presumption in favor of judicial review of the administrative action. *Khan,* 448 F.3d at 232 (citations omitted). *Khan* held that where no statute authorized a denial of a continuance, no jurisdictional bar was effective. *See id.* Accordingly, we concluded in *Khan* that a statute had to provide discretionary authority to the BIA before our jurisdiction was barred. *Id.* at 232–33. This was the same conclusion reached by the Second, Fifth, Ninth, and Eleventh Circuit Courts of Appeals. Because no statute provides that motions to reissue are solely within the BIA's discretion, we possess jurisdiction to review their denial for abuse of discretion. *See id.* at 233.

Under the abuse of discretion standard of review, we will not disturb the BIA's

decision unless it was "arbitrary, irrational, or contrary to law." *Guo v. Ashcroft,* 386 F.3d 556, 561 (3d Cir.2004) (citations and quotations omitted). The Government in its supplemental memorandum [1] agrees that the BIA's denial of reissuance may be reviewed by us for abuse of discretion, citing *Sevoian v. Ashcroft,* 290 F.3d 166, 174–77 (3d Cir.2002). We are satisfied that the BIA's denials of the motions to reissue its August 17, 2005 decision (Jahjaga) and its December 28, 2005 decision (Gjeroski) were not proper exercises of its discretion, as they were contrary to law.

## III.

■ Our concern with the issue of whether an alien subject to deportation has received the reasons for the BIA's action in the form of an opinion, stems from the recognition that a deportation order may tear an alien from his home and family and may deprive him of "all that makes life worth living." *Ng Fung Ho v. White,* 259 U.S. 276, 284, 42 S.Ct. 492, 66 L.Ed. 938 (1922) (Brandeis, J.). If the reasons for the BIA's action in ordering removal are not known to the alien because the BIA failed to properly serve its opinion, the consequences to the alien may be as drastic as Justice Brandeis reasoned. Hence we focus on the answer to the fundamental question: what should we do if the alien claims he did not receive the

BIA's opinion informing him of the reason he is being removed? To answer this question, we refer to the operative regulations and the cases interpreting them.

### A.

Federal regulations require the BIA to serve its final decision on an alien, 8 C.F.R. § 1003.1(f), or the alien's attorney of record, 8 C.F.R. § 1292.5(a). The regulations define "service" as either "physically presenting or mailing a document to the appropriate party or parties." 8 C.F.R. § 1003.13. Although we have considered the issue in the context of a failure to receive a *notice of hearing, see Santana Gonzalez v. Attorney General,* 506 F.3d 274 (3d Cir.2007), we have never addressed the effect of an alien's claim that the BIA's *decision of removal* was not received by him. Two Circuit Courts of Appeals, taking slightly different approaches, have addressed the issues we write on today.

In *Singh v. Gonzales,* 494 F.3d 1170 (9th Cir.2007), the petitioner claimed he never received a BIA decision ordering his removal. After learning about the decision, he filed a motion to reissue the decision to allow him to file a timely Petition for Review. Singh attached an affidavit to his motion that he never received the decision. The BIA denied Singh's motion, relying on essentially the same reasoning as in the

---

**1.** Prior to argument of these two appeals, we had asked counsel for the Government and the parties to address the questions of jurisdiction and reissuance of notices. As to jurisdiction, the Government withdrew its earlier argument that we could not review the BIA's decision because of its discretionary nature, conceded that we possess jurisdiction to review the issues on these appeals, and agreed that we could review the BIA's decision for abuse of discretion. The Government also conceded that we could review any due process issues raised by petitioners. While we need not address whether petitioners' due

process rights are implicated in these proceedings, we do note that this Court has the ability to review due process issues raised in a Petition for Review. *See* 8 U.S.C. § 1252(a)(2)(D) (providing that this Court retains jurisdiction over "constitutional claims or questions of law."); *Papageorgiou v. Gonzales,* 413 F.3d 356, 358–59 (3d Cir.2005); *cf. Cabrera–Perez v. Gonzales,* 456 F.3d 109, 115 (3d Cir.2006) ("The Fifth Amendment's due process protections apply to aliens in removal proceedings.") (citing *Reno v. Flores,* 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993)).

instant consolidated appeals.[2] Singh's petition followed.

The Ninth Circuit Court of Appeals looked to the BIA's reasoning for denying Singh's motion for reissuance and held that it "provided no explanation of how it reached [its] conclusion" that it properly mailed the decision, nor did it address Singh's affidavit claiming non-receipt. *Id.* at 1172. The Ninth Circuit also noted the presence of a transmittal cover letter in the administrative record. On this point, the Ninth Circuit stated:

> Although we have previously held that a properly addressed cover letter creates a presumption of mailing on the date of the cover letter ... we have never held that such a presumption cannot be rebutted by affidavits of nonreceipt by both a petitioner and his counsel of record.... Because the only evidence regarding mailing petitioners would have is information about their own nonreceipt of the decision ... a petitioner's sworn affidavit—particularly if reinforced by affidavit of counsel, as here— [is] sufficient to rebut the presumption of mailing and requir[e] the BIA to look beyond the cover letter.

*Id.* (internal citations and quotations omitted). Moreover, because the BIA never addressed Singh's affidavits in the first instance, the Ninth Circuit remanded to the BIA:

> Without the benefit of the BIA's articulated reasoning on these issues, we decline to decide in the first instance the weight and consequences of Singh's and his counsel's sworn affidavits of nonreceipt, and remand to the BIA to do so. *See INS v. Ventura,* 537 U.S. 12, 17, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (per curiam). It would be helpful to the court if on remand the BIA would specifically address what procedures or processes exist to assure that petitioners are notified of the BIA's decisions, including assuring that decisions are actually mailed, and how petitioners can inform themselves of the status of pending decisions.

*Id.* at 1173.

On the other hand, the Second Circuit Court of Appeals held in *Ping Chen v. Attorney General,* 502 F.3d 73, 76–77 (2d Cir.2007) that, despite an alien's affidavit of non-receipt of the BIA's opinion, substantial evidence supported the BIA's finding that the order was correctly mailed to the alien's address. In *Chen,* the alien claimed non-receipt of a BIA decision. Chen then sought reissuance of the decision to enable her to timely petition for review. The BIA denied this request. Chen then petitioned the Second Circuit for review. The Government challenged Chen's petition, arguing that it was not filed within ninety days after the BIA's decision ordering her removal. *See* 8 U.S.C. § 1229a(c)(7)(C) (requiring motions to reopen to be filed within ninety days of the removal order, subject to certain exceptions).[3] The Second Circuit held that

---

**2.** Specifically, the BIA in *Singh* held:
> The respondent has filed a motion to reissue the Board's October 7, 2003, decision. The motion is denied, as the record reflects that the respondent's decision was correctly mailed to the respondent's attorney of record.

*Singh,* 494 F.3d at 1172.

**3.** Lest there be confusion as to the deadline for filing motions to reopen and/or to review

final orders of removal, we note that a motion to reopen a final order of removal must be filed within ninety days of the removal order, subject to certain exceptions not here applicable. 8 U.S.C. § 1229a(c)(7)(C)(i). Review of a denial of a timely motion to reopen must be filed within thirty days of the denial, which constitutes the final order of removal. 8 U.S.C. § 1252(b)(1).

Chen's motion to reopen "could be timely if she established that the BIA had failed to serve her with the removal order." *Chen*, 502 F.3d at 75. The court then addressed the proof required to satisfy the alleged lack of service.

The Second Circuit, like the Ninth Circuit in *Singh*, centered its attention on the mailing of the BIA's decision. It held that evidence of non-receipt of a BIA's decision, presented in the form of an affidavit, "is relevant to show that the order may not have been properly mailed at all [although] it is circumstantial evidence as to that question...." *Id.* at 77 (citation omitted). Therefore, the Second Circuit opined that "in resolving the question of mailing, the BIA may reasonably accord less weight to an affidavit of non-receipt than to its own records establishing that the order was in fact mailed." *Id.* The court then stated that the BIA "must, however, take into account relevant evidence that, considered together with the affidavit of non-receipt, could cast doubt on the accuracy of the BIA's records." *Id.* (citation omitted).

The only evidence of mailing in Chen was, as in *Singh* and as in the Jahjaga and Gjeroski appeals that we are reviewing, a transmittal cover letter addressed to Chen's residence. Nevertheless, the Second Circuit held that this was substantial evidence of mailing, which Chen's and her relative's affidavits of non-receipt did not contradict. *Id.* According to the court, Chen's affidavits did "not point to any irregularity in the BIA's records suggesting service of the ... order was not accomplished as indicated by the cover sheet." *Id.*[4] The only evidence before the BIA, according to the Second Circuit, was Chen's affidavit and an affidavit from her relative pertaining to non-receipt of the BIA's opinion. This was insufficient, the Second Circuit held, to rebut "the substantial evidence supporting the BIA's finding that the order was correctly mailed to Ping Chen's address." *Id.* Therefore, the Second Circuit denied her petition.

The *Chen* court emphasized that its interpretation of 8 C.F.R. § 1003.1(f), which requires mailing of a decision, does not require that the party actually receive the decision. *Id.* Building on that premise, the court held that once the BIA has performed its duty of service (e.g., mailing the decision), the time for appeal and motions begins to run even if the order miscarries in the mail or the alien does not receive it. *Id.* at 76–77. Says the Second Circuit, "that is not the BIA's fault." *Id.* at 77.

## B.

We believe the Ninth Circuit took the better approach in remanding to the BIA the question of what weight should be accorded to an alien's affidavit of non-receipt in determining whether the BIA's final order of removal was properly served. We take comfort in an analysis, such as in *Singh*, because it affords the BIA an opportunity to consider evidence suggesting that the final order of removal may have been never properly served. Because the content and reasoning of the BIA opinion can mean life or death to a deportee, a failure to properly serve an order of re-

---

**4.** The court also dismissed circumstantial evidence submitted by Chen as having been waived. For instance, the court did not consider Chen's claim that she had much to lose by letting her time to appeal lapse. *Chen*, 502 F.3d at 77. Neither did the court consider Chen's argument that she promptly filed a motion to have the BIA reissue its opinion upon learning of the BIA's decision. *Id.* She claimed these contentions constituted additional circumstantial evidence relevant to her willingness to adhere to agency deadlines. *Id.*

moval—so that it may be challenged—offends the principles of our justice system.[5]

An alien claiming non-receipt of a BIA decision, and who presents the BIA with an affidavit to that effect, may well have provided enough evidence to rebut the presumption of mailing which attaches to the presence of a transmittal cover letter in the administrative record. However, we decline to decide that question in the first instance. Instead, we will remand to the BIA to determine what weight to accord to the claims of non-receipt of its opinions by Jahjaga and Gjeroski in determining whether the opinions were properly served, and to explain the reasoning and analysis it employs in reaching its decision. In doing so, we also honor the Government's request that we remand both appeals to the BIA so as to permit the BIA to bring its expertise to bear upon the matter. *See Ventura,* 537 U.S. at 17, 123 S.Ct. 353.

**5.** Even where litigants in our federal courts do not receive notice of the district court's decision, we have amended our jurisdictional rules of Federal Rule of Appellate Procedure 4 to provide a safety valve permitting delayed appeals. *See* Fed. R.App. P. 4(a)(6); *Firmansjah v. Ashcroft,* 347 F.3d 625, 626 (7th Cir. 2003).