**IMG-181** **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2640
_____

AVNI JAHJAGA,
                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                              Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A079-453-765)
Immigration Judge: Honorable Eugene Pugliese

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 28, 2010
Before:  MCKEE, Chief Judge, HARDIMAN AND COWEN, Circuit Judges

(Opinion filed: July 30, 2010)

_____

OPINION
_____

PER CURIAM

    Avni Jahjaga petitions for review of the removal order issued by the Board of

Immigration Appeals ("BIA") denying his motion to reopen requesting asylum on

humanitarian grounds.  For the reasons set forth below, we will dismiss the petition for

lack of jurisdiction.

The facts and procedural travel of this case are well-known to the parties and have been recounted in our previous decision, Jahjaga v. United States Attorney General, 512 F.3d 80 (3d Cir. 2008). Jahjaga is a native of Serbian Montenegro and citizen of Kosovo whose applications for asylum and other relief were denied after a removal hearing in 2003. The Board affirmed the IJ's denial of asylum relief in 2005 based on the lack of sufficient documentary evidence to support Jahjaga's claim that he was shot in the spine in 1999 (rendering him paraplegic) on account of his political activities as a ranking member of the Democratic League of Kosovo ("DLK"). Instead of filing a petition for review, Jahjaga filed a motion to reopen in which he supplied the corroborating evidence that the BIA had identified as central to his asylum claim. The Board denied reopening in August 2005, ruling that the documentary evidence was not new because it was reasonably available before the hearing, and it was insufficient to show changed country conditions. The Board denied Jahjaga's second motion to reopen as untimely, rejecting his claim that he had not received the August 2005 order. We remanded the matter to the BIA to consider the weight to be accorded Jahjaga's claim of non-receipt of the Board's order. Jahjaga, 512 F.3d at 85-86. On remand, the BIA reaffirmed its denial of Jahjaga's motion to reopen. (See BIA Decision dated July 28, 2008.) Jahjaga did not file a petition for review.

On October 6, 2008, Jahjaga filed a motion to reopen seeking asylum on

humanitarian grounds pursuant to 8 C.F.R. § 1208.13(b)(1)(iii), and sua sponte reopening by the Board. Jahjaga claimed that he joined the DLK in 1990, becoming vice-chairman in 1997. According to Jahjaga, he was targeted by the Serbian government and by Serbian extremists for his political activities. He said that he was arrested by Serbian police and beaten twice in 1990 and 1993, and in 1997, he was forced to go into hiding. His father and mother, both of whom were Albanians, were killed by Serbs.

In 1999, Jahjaga's party, the DLK, split with Albanian extremists who advocated violent expulsion of all non-Albanians from Kosovo. Shortly after the split, Jahjaga began receiving threats of harm from the Albanian extremists. Months later, in November 1999, he was shot in the back by an unknown assailant, which left him a paraplegic. He continued to receive threats in the hospital and, in 2000, shots were fired into his house while he was recuperating there. In 2001, Jahjaga was forced into hiding after his house was fire-bombed. In April 2002, Jahjaga decided to leave Kosovo when he learned that authorities were looking for him. He claimed that he no longer had any close family ties in Kosovo as his siblings and close relatives have all moved to the United States. In support of his motion to reopen, Jahjaga submitted the same documentary evidence that the BIA had previously rejected as not "new" in 2005.[1]

---

[1] The evidence included a certification of Jahjaga's membership and party positions held in the DLK from 1990 through 1999 ("DLK Certificate"), affidavits and statements from his siblings, in-laws, and friends corroborating his asylum claim, death certificates for his parents indicating that each of them was "killed by Serbs," verification from the Association of Disabled People of Kosovo confirming Jahjaga's paraplegic

3

The Board denied Jahjaga's request for relief on May 9, 2009. The Board reasoned that Jahjaga's failure to provide corroborating evidence of past persecution at his removal hearing rendered him "unable to establish a nexus between the harm he claims to have suffered and his political opinion" for purposes of establishing grounds for humanitarian relief.[2] (J.A. at 4.) Thus, according to the Board, because of Jahjaga's failure to show "past persecution," neither the IJ nor the BIA had reason to consider asylum for humanitarian reasons at the hearing or on appeal. (Id.) As for Jahjaga's claim that he was unable to return to Kosovo because he could not obtain medical treatment for his paralysis there and had no one to care for him, the Board noted that the Department of Homeland Security, not the Board, could grant deferred action status for medical reasons as a matter of discretion. (Id.) The Board declined to reopen proceedings sua sponte and denied the motion. Jahjaga filed this timely petition for review.

Jahjaga contends that the Board wrongly denied reopening to consider his request for humanitarian asylum and erroneously failed to consider his documentary evidence of

_____

condition, and medical records documenting his gunshot wound to the spine.

[2] In Sheriff v. Attorney General, 587 F.3d 584 (3d Cir. 2009), we explained that, under 8 C.F.R. § 1208.13(b)(1)(iii), an alien who has suffered past persecution and who does not face a reasonable possibility of future persecution may be eligible for a discretionary grant of asylum on humanitarian grounds if (1) he can demonstrate compelling reasons, arising out of the severity of the past persecution, for being unwilling or unable to return to the designated country, or (2) he has established a reasonable possibility that he may suffer other serious harm upon removal to that country, which does not arise out of the past persecution but which is "so serious as to equal the severity of persecution." Id. at 593 & 596.

4

past persecution under 8 C.F.R. § 1003.2(c). The Government asserts that the BIA did not abuse its discretion in denying reopening because there was no record evidence of past persecution warranting humanitarian relief. The Government also argues that, to the extent that the BIA declined to reopen sua sponte pursuant to its authority under 8 C.F.R. § 1003.2(a), we lack jurisdiction to review Jahjaga's claim.

We begin and end with the threshold question of our jurisdiction to review the BIA's decision in Jahjaga's case. Pursuant to § 1003.2(a), the BIA may sua sponte reopen a case at any time. A petitioner must show an exceptional situation to make a prima facie case for sua sponte reopening. Cruz v. Attorney General, 452 F.3d 240, 249 (3d Cir. 2006). However, the BIA has discretion to deny a motion to reopen even if a prima facie case is made. Id. We have held that the BIA's failure to sua sponte reopen a decision based on its unfettered discretion is not reviewable. Calle-Vujiles v. Ashcroft, 320 F.3d 472, 474-75 (3d Cir. 2003).

Here, the BIA noted that Jahjaga requested "reopening for 'humanitarian asylum'. . . and for sua sponte reopening." After providing the legal standard for humanitarian asylum with citations to the regulation and relevant caselaw, the BIA stated that neither the IJ nor the Board had reason to consider humanitarian asylum based on the hearing record. The Board then stated that it "declines to reopen proceedings under its discretionary sua sponte authority at 8 C.F.R. § 1003.2(a). The motion to reopen will, therefore, be denied." Notably, the BIA did not address the question whether the motion

to reopen was number or time-barred under 8 C.F.R. § 1003.2(c).  We read the BIA's decision declining to reopen proceedings as an exercise of its unfettered discretion.  Thus, we lack jurisdiction to review it.[3]  Calle-Vujiles, 320 F.3d at 474-75.

Accordingly, we will dismiss for lack of jurisdiction Jahjaga's petition for review of the Board's denial of reopening pursuant to 8 C.F.R. § 1003.2(a).

---

[3] The facts in this case are not similar to those that we discussed in Cruz v. Attorney General, 452 F.3d 240, 249 (3d Cir. 2006), where we questioned whether the BIA could, without explanation or reason, depart from a settled practice when declining to exercise its authority to sua sponte reopen proceedings.  Here, the BIA has not adopted, either explicitly or through practice, a policy of applying a particular rule or standard to its consideration of motions to reopen based on a claim of humanitarian asylum.