**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1670
_____

STANFORD ANTHONY SCOTT,
a.k.a. Peter Brown,
a.k.a. Sanford Scott,
a.k.a. Scott Stanford,
a.k.a. Stamford Scott,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(A041-651-732)
Immigration Judge:  Honorable Jeffrey L. Romig
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 1, 2011

Before:  SCIRICA, SMITH and VANASKIE, <u>Circuit</u> <u>Judges</u>

(Opinion filed:  April 6, 2011)
_____

OPINION
_____

PER CURIAM.

Stanford Anthony Scott, a criminal alien, petitions for review of a final order of removal entered by the Board of Immigration Appeals ("BIA"). Because the petition for review was untimely filed in this Court, we will dismiss it for want of jurisdiction.

I.

Scott is a native and citizen of Jamaica. He was admitted to the United States in 1988 at age eighteen and became a lawful permanent resident. His various encounters with this nation's criminal justice system include convictions in New York for assault in the third degree (1990), petit larceny (1991), and two counts of criminal sale of marijuana in the fourth degree (1994). The Department of Homeland Security ("DHS") served a Notice to Appear in 2004 charging removability based on these convictions. An Immigration Judge ("IJ") in York, Pennsylvania, found Scott removable as charged and eligible to seek a waiver of inadmissibility under INA § 212(c). Scott was released from immigration custody in 2005 on a bond, and venue over the removal proceeding was transferred to Philadelphia.

Not long after his release, Scott was arrested and charged with conspiracy to distribute, and possession with intent to distribute, one thousand kilograms or more of marijuana, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A). Scott pled guilty to the charge in 2006, and the District Court for the Eastern District of Pennsylvania imposed a sentence of 70 months' imprisonment. DHS filed notice of additional grounds for removal in light of the conviction, and venue was transferred back to York due to the location of the prison in which Scott was serving the federal sentence.

An IJ in York reaffirmed that Scott is removable as charged in the Notice to Appear, and determined that the 2006 conviction renders Scott ineligible for § 212(c) relief. The IJ thus pretermitted the § 212(c) application in the absence of any showing by Scott that the finality of his 2006 conviction might be questioned.

Scott applied for asylum, withholding of removal, and Convention Against Torture ("CAT") relief, and he testified at a hearing regarding his fear of returning to Jamaica. The IJ found that the 2006 conviction is both an aggravated felony and a particularly serious crime, making Scott ineligible for asylum and withholding of removal. The IJ denied CAT relief on the ground that inconsistencies in Scott's testimony undermined his claimed fear that he is likely to be tortured in Jamaica.[1] The IJ ordered removal.

Scott appealed pro se, arguing that he had met his burden of proof for asylum or CAT relief. On January 27, 2009, the BIA dismissed the appeal. It agreed that Scott is ineligible for asylum and withholding of removal due to the 2006 conviction. In addition, the BIA held that Scott's contention that he is vulnerable to torture by those who killed his father is unsupported by the evidence, he failed to establish his paternity, and he failed to show that, after a long absence from Jamaica, it is more likely than not that he would be tortured there. Scott petitions this Court for review of the BIA's decision.

II.

We must first consider our jurisdiction. A petition for review must be filed "not

---

[1] As the IJ explained, Scott's "CAT deferral claim is based primarily on his belief that his father was a notorious criminal figure in Jamaica, and that [Scott] would suffer some kind of retribution for being his father's son[.]" A.R. at 30-31.

3

later than 30 days after the date of the final order of removal." 8 U.S.C. § 1252(b)(1). Failure to file the petition within the thirty-day period deprives this Court of jurisdiction. McAllister v. Att'y Gen., 444 F.3d 178, 185 (3d Cir. 2006). Here, the BIA's decision, which constitutes the final order of removal, is dated January 27, 2009. Scott filed his petition for review more than a year later, on or about March 4, 2010.

Scott stated in his pro se petition for review that he received the BIA's decision on "February 25, 2010," raising the suggestion that he timely filed his petition within thirty days of that date. A motions panel of this Court referred the question of appellate jurisdiction to this merits panel, and it directed the parties to brief whether the petition for review was timely filed, particularly in light of evidence in the record that the envelope in which the BIA mailed its decision was returned to sender, and that the cover letter addressed to Scott at the federal prison did not reference his inmate register number.

The Attorney General argues that these facts do not alter the conclusion that Scott untimely filed his petition more than a year after expiration of the time to seek review. Scott, for his part, suggests in his reply brief that delivery of the BIA's decision failed because the Bureau of Prisons had unexpectedly transferred him from the prison in which he was being housed.[2] Scott seems to argue that his petition for review should be deemed timely given that his transfer caused delivery of the BIA's decision to fail.

We cannot afford Scott any tolling of the thirty-day period in which to file the

---

[2] Scott states the following: "BOP administrative transfer was unpredictable. Petitioner's administrative transfer was unexpected. Thus, BOP did not disclose inmates [sic] destination when under administrative transfer. That explained why the record indicates that Board's order was 'returned to sender.'" Reply Br. at 4.

4

petition for review based on considerations of equity. See, e.g., Ruiz-Martinez v. Mukasey, 516 F.3d 102, 118 (2d Cir. 2008) (holding that "the applicable limitations period of 30 days is [not] subject to equitable tolling"). Scott's petition, therefore, must be dismissed as untimely filed unless he can show that his case falls within either of the "two situations in which petitions for review arguably filed after expiration of the time limitation may nevertheless confer jurisdiction on a court of appeals." Singh v. INS, 315 F.3d 1186, 1188 (9th Cir. 2003). The first situation, plainly inapplicable here, is "where there has been official misleading" regarding the time for filing. Id. The second holds that "the time for filing a review petition begins to run when the BIA complies with the terms of federal regulations by mailing its decision to the petitioner's … address of record." Id. (quotation marks omitted); see also Villegas de la Paz v. Holder, 614 F.3d 605, 608 (6th Cir. 2010); Ping Chen v. Att'y Gen., 502 F.3d 73, 75 (2d Cir. 2007); Radkov v. Ashcroft, 375 F.3d 96, 99 (1st Cir. 2004).

The federal regulations governing service of a BIA decision provide that a copy "shall be served upon the alien[.]" 8 C.F.R. § 1003.1(f). Service may be accomplished by "mailing" the decision "to the appropriate party," 8 C.F.R. § 1003.13, and the appropriate party is the alien himself when he proceeds pro se, 8 C.F.R. § 1292.5(a).

Scott has not shown that the BIA failed to comply with its regulations. A transmittal cover letter and envelope in the record establish that the BIA mailed a copy of its decision on January 27, 2009. The mailing was returned to sender on January 29, 2009, with the returned envelope bearing a Postal Service stamp indicating "Attempted –

5

Not Known" and "Unable to Forward." The BIA's letter was addressed to Scott at his address of record, a federal prison in Pennsylvania. While Scott now suggests for the first time that the Bureau of Prisons had transferred him, and therefore he was not present at his address of record when the BIA's mailing arrived, Scott never gave notice of his change of address to the BIA, as he was required to do. See 8 C.F.R. § 1003.38(e) ("Within five working days of any change of address, an alien must provide written notice of the change of address on Form EOIR-33 to the Board."); see also Tobeth-Tangang v. Gonzales, 440 F.3d 537, 540 (1st Cir. 2006) (explaining that "[t]he regulations prescribe a set procedure by which aliens and their attorneys must keep the BIA informed of changes in address"). The BIA need only mail its decision to the alien's address of record in order to comply with its regulations. Singh, 315 F.3d at 1188.

As mentioned, the BIA's mailing did not reference Scott's inmate register number, which generally is included in correspondence with an inmate. But Scott has not argued that the absence of this information played any role in the failed delivery; rather, he suggests that delivery failed due to his transfer. Further, while the regulations define service as "mailing a document to the appropriate party," 8 C.F.R. § 1003.13, Scott has not argued that "mailing" is properly accomplished only when the BIA includes the alien's inmate register number in his prison address.

We have recognized that "[a]n alien claiming non-receipt of a BIA decision, and who presents the BIA with an affidavit to that effect, may well have provided enough evidence to rebut the presumption of mailing which attaches to the presence of a

6

transmittal cover letter in the administrative record." Jahjaga v. Att'y Gen., 512 F.3d 80, 86 (3d Cir. 2008). In Jahjaga, the aliens submitted affidavits to the BIA claiming non-receipt of the final decisions and moved the BIA to reissue those decisions in order to restart the time in which to petition for review. After the BIA declined to reissue, the aliens petitioned for review. We remanded in Jahjaga for the BIA "to determine what weight to accord to the claims of non-receipt of its opinions by [the aliens] in determining whether the opinions were properly served, and to explain the reasoning and analysis it employs in reaching its decision." 512 F.3d at 86.

Here, unlike Jahjaga, we have no cause to remand for consideration of whether the BIA's decision was properly served. Scott has not submitted an affidavit or any sworn statement claiming non-receipt, and he has created no record to suggest that he can rebut the presumption of proper mailing that we ordinarily accord to the transmittal letter and envelope. Moreover, Scott did not move the BIA to reissue its decision, which, as the Attorney General notes, would be the appropriate recourse for an alien seeking to remedy an alleged failure in service. See, e.g., Lewis v. Holder, 625 F.3d 65, 68 (2d Cir. 2010) (BIA's reissuance of decision triggers new thirty-day period to obtain judicial review).

The record here reflects that the Postal Service failed in its attempt to deliver the BIA's decision at Scott's address of record. Scott suggests that this failure was due to his prison transfer, which may or may not be the case. But for purposes of our jurisdictional analysis, it will suffice to observe that we have no cause to pin any fault for the failed delivery upon the BIA (rather than upon Scott, who did not provide notice of his change

7

of address), and there has been no showing that the BIA failed adequately to comply with its regulations. "Once the BIA has performed its duty of serving the order, the time for appeal … begins to run, even if the order miscarries in the mail or the alien does not receive it for some other reason that is not the BIA's fault." Ping Chen, 502 F.3d at 76-77; see also Singh, 315 F.3d at 1189 (dismissing petition for review as untimely because dismissal "would not penalize the petitioner for the BIA's failure to comply with the terms of the federal regulations") (quotation marks omitted).

Scott's thirty-day period in which to file a petition for review began to run on January 27, 2009, the date on which the BIA served its decision in compliance with its regulations. Scott's petition for review was filed more than a year later, in March 2010. His untimely filing deprives this Court of jurisdiction to review the BIA's decision.

III.

For the foregoing reasons, we will dismiss the petition for review.[3]

---

[3] We note that we would deny the petition for review even if we were to reach the merits. Scott does not dispute that he is removable on the grounds charged and that he was properly designated an aggravated felon. Nor does he challenge the determination that his 2006 conviction renders him ineligible for asylum, withholding of removal, and § 212(c) relief. Scott's lone contention before this Court is that the BIA erred in failing to afford CAT relief based on the evidence he presented regarding his fear of torture in Jamaica from the individuals who allegedly killed his father. While the Attorney General argues that we lack jurisdiction under 8 U.S.C. § 1252(a)(2)(C) to review this issue in light of Scott's criminal convictions, this Court retains jurisdiction over "questions of law," § 1252(a)(2)(D), including the BIA's application of law to undisputed facts. See Toussaint v. Att'y Gen., 455 F.3d 409, 412 n.3 (3d Cir. 2006). Here, substantial evidence supports the BIA's determination that Scott failed to show, based on the evidence presented before the IJ, that it is more likely than not he would be subjected to torture upon return to Jamaica.

8