**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-2950

_____

SUHAIL FAROOQ,
                              Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition for Review of an Order
from the Board of Immigration Appeals
(Agency No. A214-821-489)
Immigration Judge: Shelly W. Schools

_____

Argued on September 20, 2022

Before: AMBRO[*], RESTREPO, and FUENTES, *Circuit Judges*

(Filed: February 8, 2023)

Rachel M. Rosenberg
Will W. Sachse
Dechert LLP
2929 Arch Street
18th Floor, Cira Centre
Philadelphia, PA 19104

_____

[*] Judge Ambro assumed senior status February 6, 2023.

Jacob Burnett          [ARGUED]
University of Pennsylvania School of Law
3400 Chestnut Street
Philadelphia, PA 19104
          *Counsel for Petitioner*

Brian Boynton
Principal Deputy Assistant Att'y General
Civil Division
Melissa Neiman-Kelting
Assistant Director
Office of Immigration Litigation
Margot P. Kniffin    [ARGUED]
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
          *Counsel for Respondent*

_____

**OPINION**[*]

_____

RESTREPO, *Circuit Judge*.

Petitioner Suhail Farooq, a noncitizen convicted of wire fraud, petitions for review of his final order of removal. Following an appeal, the Board of Immigration Appeals ("BIA") affirmed Farooq's order of removal because his conviction constituted a "particularly serious crime" but remanded the matter for further fact-finding on his Convention Against Torture ("CAT") claim. At the Immigration Judge's ("IJ") behest, Farooq waited

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

until the remanded proceedings on his CAT claim concluded before filing his petition for review. Consequently, he untimely filed.

This Court does not have jurisdiction over untimely filed petitions for review. A petition for review of a final order of removal must be filed within 30 days after the order becomes final. 8 U.S.C. § 1252(b)(1). Pursuant to 8 U.S.C. § 1101(a)(47)(A), a final order of removal is an order that "conclud[es] that the alien is deportable or order[s] deportation." That is the case even if the BIA affirmed the final order of removal but remanded the case for further proceedings on the CAT claim. *See Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (holding that CAT orders are distinct from, and do not affect the finality of, final orders of removal). Nevertheless, we have jurisdiction over this matter because the Immigration Judge officially misled Farooq by instructing him to wait to file the petition until the remand proceedings concluded. *Huang v. I.N.S.*, 47 F.3d 615, 617 (3d Cir. 1995) (citation omitted) (stating an appellate tribunal has jurisdiction to review an otherwise untimely appeal if the petitioner was "misled by the court") .

On the merits, Farooq argues that the BIA erred by misapplying the two-step legal framework, set out in *In re N-A-M-*, 24 I. & N. Dec. 336, 342 (BIA 2007), for determining whether a conviction constitutes a "particularly serious crime" for purposes of the Immigration and Nationality Act ("INA"). We agree. The Government concedes error but asserts that remand is futile. We disagree. Thus, we will grant the petition and remand to the BIA.

# I. BACKGROUND

Petitioner Suhail Farooq is a native and citizen of India. He arrived in the United States on a nonimmigrant B-1 visa in October 2017, which he overstayed. Once in the United States, Farooq engaged in a wire fraud scheme and was subsequently convicted of wire fraud under 18 U.S.C. § 1343. In June 2019, he was sentenced to 15 months in prison.

Following Farooq's conviction, the Department of Homeland Security ("DHS") served him with a Notice to Appear ("NTA"), charging him as removable under both 8 U.S.C. § 1227(a)(1)(B), for remaining in the United States for a time longer than permitted, and 8 U.S.C. § 1227(a)(2)(A)(i), for his conviction for wire fraud within five years after admission.

Following a removal hearing, the Immigration Judge denied Farooq's request for adjustment of status, asylum, and statutory withholding of removal, but granted his request for deferred protection under the CAT, finding that he would likely experience torture if removed to his home country of India. Farooq was not eligible for statutory withholding of removal because his conviction for wire fraud constituted a "particularly serious crime" under the INA, thus the Immigration Judge entered an order of removal against him. The parties cross-appealed this decision to the BIA, which issued a ruling in July 2020.

The BIA agreed with the Immigration Judge's determination that Farooq's wire fraud conviction qualified as a "particularly serious crime," rendering him ineligible for statutory withholding. On the other hand, the BIA found that the Immigration Judge's

4

grant of deferred removal under the CAT did "not contain adequate findings of fact or conclusions of law concerning [Farooq's] request for protection," because it disregarded the effect of "the passage of time [and Farooq's] ability to relocate in India" on "the likelihood of [his] future torture." JA 87. Consequently, the BIA affirmed the order of removal but remanded the proceedings for further fact-finding on the CAT claim.

Farooq did not file his petition for review of the BIA's removal order within 30 days of the BIA's ruling, because the Immigration Judge told him "that he should not file his appeal prior to the . . . renewed ruling on deferral of removal under CAT." *See* Pet'r Br. at 11–12; *see also id.* at 11 n.1.

## II. JURISDICTION

### A. Pursuant to *Nasrallah,* a remand based solely on a CAT order does not extend the 30-day jurisdictional time bar for appealing a final order of removal from the BIA.

The BIA had jurisdiction over this case pursuant to 8 C.F.R. § 1003.1(b)(3) (stating appeals may be filed with the BIA from "[d]ecisions of Immigration Judges in removal proceedings"). In turn, we have judicial review over "final orders of removal" issued by the BIA, as well as any "questions of law and fact . . . arising from . . . action[s] taken or proceeding[s] brought to remove" a noncitizen from the United States. *See* 8 U.S.C. § 1252(b)(9); *Nasrallah v. Barr*, 140 S. Ct. 1683, 1690 (2020). Section 1252(b)(1) imposes a temporal limit on our jurisdiction: we can only review petitions "filed not later than 30 days after the date of [a] final order" of removal. *See Verde-Rodriguez v. Att'y Gen. U.S.*, 734 F.3d 198, 201 (3d Cir. 2013) ("Importantly, we have no jurisdiction over an untimely petition.").

5

An "order of removal" is one that "conclud[es] that the alien is deportable or or-der[s] deportation." 8 U.S.C. § 1101(a)(47)(A). An "order of removal" "become[s] fi-nal" "upon the earlier of—(i) a determination by the Board of Immigration Appeals af-firming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." *Id.* § 1101(a)(47)(B).

Here, Farooq untimely filed his petition for review more than 30 days after the BIA affirmed his final order of removal. Both parties contend that the 30-day timeline governing our jurisdiction over Farooq's petition should run from "the immigration judge's August 27, 2020 decision, entered following the Board's remand for a 'new deci-sion' addressing deferral of removal under the CAT." Resp. Br. at 2; Pet'r Br. at 11. They ask us to adopt a rule to that effect: that an order becomes final when "the BIA, or IJ on remand, has ruled on **all** claims for relief that may be consolidated for appellate re-view." Pet'r Br. at 6 (emphasis in original). The parties' proposal would allegedly serve the aims of "judicial efficiency and comprehensive disposition of immigration claims." Resp. Br. at 18. However, such a rule would treat CAT orders as "final orders of re-moval" in a manner inconsistent with the Supreme Court's recent guidance in *Nasrallah.*

In *Nasrallah*, the Supreme Court held that a CAT order is "distinct from a final or-der of removal and does not affect the validity of the final order of removal." 140 S. Ct. at 1692. Although CAT orders are entered "during and incident to [an] administrative proceeding on removability," *id.* (internal quotation marks omitted), they do not "disturb the final order of removal" or "merge into the final order of removal," *Johnson v. Guz-man Chavez*, 141 S. Ct. 2271, 2288 (2021) (citing *Nasrallah*, 140 S. Ct. at 1691).

6

By operation, CAT orders "prohibit[] DHS from removing the alien *to* [a] particular country, not *from* the United States" and do not address "the antecedent question [of] *whether* an alien is to be removed from the United States." *Johnson*, 141 S. Ct. at 2285–86 (emphasis in original); *see also Abdulai v. Ashcroft*, 239 F.3d 542, 545 (3d Cir. 2001) (superseded by statute on other grounds) ("Withholding of removal . . . confers only the right not to be deported to a particular country—not a right to remain in this one."); 8 C.F.R. § 1208.16(f) ("Nothing in this section . . . shall prevent the Service from removing an alien to a third country other than the country to which removal has been withheld or deferred."). Even if CAT relief is granted, a petitioner's underlying removal order "remains in full force" and the agency "retains the authority to remove the alien to any other country authorized by the statute." *See Johnson*, 141 S. Ct. at 2285.

From *Nasrallah* and *Johnson*, it follows that "the validity of removal orders is not affected by the grant of withholding-only relief" and ongoing CAT proceedings cannot "render non-final an otherwise 'administratively final'" order of removal. *Johnson*, 141 S. Ct. at 2288 (citing *Nasrallah*, 140 S. Ct. at 2287–88). CAT orders do not affect our jurisdiction over final orders of removal.[1] In sum, pursuant to *Nasrallah*, we do not have jurisdiction to review untimely filed petitions. However, there are exceptions to that rule.

---

[1] The 2005 REAL ID Act, 8 U.S.C. § 1252(a)(4) provides for direct review of CAT orders in the courts of appeals, so Farooq could have appealed his CAT order later even if he first timely filed his petition for review of the final order of removal.

**B. We have jurisdiction pursuant to the officially misled exception.**

There are two exceptions to the otherwise strict 30-day jurisdictional time bar set out in § 1252(b)(1). *Scott v. Att'y Gen. of U.S.*, 422 F. App'x 123, 126 (3d Cir. 2011) (per curiam) (citing *Singh v. I.N.S.*, 315 F.3d 1186, 1188 (9th Cir. 2003)) (holding there are "two situations in which petitions for review arguably filed after expiration of the time limitation may nevertheless confer jurisdiction on a court of appeals"). First, we have recognized that the time for filing a review petition begins to run when the BIA physically presents or mails its decision to the appropriate party or parties. 8 C.F.R. § 1003.13; *accord Campbell v. Att'y Gen. of U.S.*, 844 F. App'x 546, 549 (3d Cir. 2021 (per curiam). Second, as relevant here, "where a party is 'misled by the court,' an appellate tribunal [has] jurisdiction to hear an otherwise untimely appeal." *Huang v. I.N.S.*, 47 F.3d 615, 617 (3d Cir. 1995) (quoting *Vlaicu v. INS*, 998 F.2d 758, 760 (9th Cir.1993)).

The second exception applies to Farooq, who untimely filed his petition after "the Immigration Judge (IJ) instructed [him] to wait until [after] she issued her opinion [on remand] [to file] his petition for review of the Board's other holdings regarding adjustment of status, asylum, and statutory withholding."[2] Reply Br. at 1 n.1; *see also* Pet'r Br. at 11 ("[O]n remand, the IJ informed Mr. Farooq that he should not file his appeal prior to the IJ's renewed ruling on deferral of removal under the CAT."). Consequently, we may

---

[2] The Government does not contest Farooq's recollection of the Immigration Judge's instruction, but Farooq does not furnish a transcript of the hearing at which the statement was purportedly made. *See* Pet'r Br. at 11 n.1 ("Mr. Farooq requested a copy of the transcript from the August 6, 2020 proceeding, but the Government replied that it was not contesting jurisdiction, so the transcript was unnecessary.").

consider Farooq's petition, even though he "arguably filed [it] after expiration of the time limitation" set forth by § 1252(b)(1). *Scott*, 422 F. App'x at 126 (citing *Singh*, 315 F.3d at 1188); *Huang*, 47 F.3d at 617 (applying the "official misleading" exception where the agency advised petitioner to read an ambiguous rule one way, and after he acted on that advice, subjected him to a more stringent requirement). Accordingly, we have jurisdiction over Farooq's petition.[3]

### III. MERITS

**A. The BIA erred by failing to apply the mandatory first step of the "particularly serious crime" test.**

The agency failed to apply the mandatory first step of the "particularly serious crime" test which determined Farooq's eligibility for statutory withholding of removal. Statutory withholding of removal is a mandatory form of relief that prevents removal of a noncitizen to a country where that individual's life or freedom would be threatened because of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3)(A); *Ghebrehiwot v. Att'y Gen. of U.S.*, 467 F.3d 344, 351 (3d Cir. 2006). Although statutory withholding is generally available to those who meet certain criteria, it is unavailable to any noncitizen convicted of a "particularly serious crime." 8 U.S.C. § 1231(b)(3)(B)(ii); 8 C.F.R. § 1208.16(d)(2); *Luziga v. Att'y Gen. of U.S.*, 937 F.3d 244, 250 (3d Cir. 2019).

---

[3] On December 9, 2022, the Government submitted a Rule 28(j) letter suggesting, in the alternative, that the Court exercise "hypothetical jurisdiction" given the "complex" nature of the jurisdictional issues at hand. ECF No. 60 (quoting *Ventura-De Argueta v. Garland*, No. 20-963, 2022 WL 16936832, at *1 n.1 (2d Cir. Nov. 15, 2022)). Given that we have resolved the question of jurisdiction, this argument is now moot.

Immigration adjudicators decide whether an aggravated felony, punished by less than five years of imprisonment, qualifies as "particularly serious."[4]  *See* 8 U.S.C. § 1231(b)(3)(B)(iv).  Because the INA is "silent" about how that decision is made, *Chong v. I.N.S.*, 264 F.3d 378, 387 (3d Cir. 2001), the BIA has developed a two-step framework which looks to "the nature of the conviction, the type of sentence imposed, and the circumstances and underlying facts of the conviction."  *In re N-A-M-*, 24 I. & N. Dec. 336, 342 (BIA 2007), *overruled in part on other grounds by Blandino-Medina v. Holder*, 712 F.3d 1338, 1347–48 (9th Cir. 2013) (holding that *N-A-M-* does not support designating an offense with an aggregate term of less than five years as a particularly serious crime *per se*).

This Court has adopted the analysis announced in *N-A-M-*.  *See Luziga*, 937 F.3d at 253; *Denis v. Att'y Gen.*, 633 F.3d 201, 214–16 (3d Cir. 2011) (noting that *N-A-M-* "provided more clarity as to the evidence that may be considered in deciding whether an offense is particularly serious").  Under the two-step analysis, "[f]irst, adjudicators consider whether the elements of an offense 'potentially bring the crime into a category of particularly serious crimes."  *Luziga*, 937 F.3d at 252–53.  Second, "[i]f . . . the elements do potentially bring the offense within the ambit of a particularly serious crime, then an adjudicator may make the determination by considering all reliable information[,] . . . including the conviction records and sentencing information, as well as other information

---

[4] If an aggravated felony results in a "term of imprisonment of *at least* 5 years," it is *per se* particularly serious.  8 U.S.C. § 1231(b)(3)(B)(iv) (emphasis added).

10

outside the confines of a record of conviction." *Id.* at 253 (internal quotation marks omitted).

To repeat, at step one, agency adjudicators decide whether the elements of an offense "potentially bring the crime into a category of particularly serious crimes.'" *N-A-M-*, 241 I. & N. Dec. at 342. If not, "the individual facts and circumstances of the offense are of no consequence, and the alien would not be barred from a grant of withholding of removal." *Id.* "If, however, the elements do 'potentially bring the offense within the ambit of a particularly serious crime,'" step two applies: the adjudicator must make a "particularly serious crime" determination by considering "all reliable information[,] . . . including the conviction records and sentencing information, as well as other information outside the confines of a record of conviction." *Id.*; *see also Luziga*, 937 F.3d at 253. In other words, courts must engage in step one, but whether they engage in step two depends on the results of the step one analysis.

Here, the Immigration Judge departed from the *N-A-M-* framework, skipping right over the preliminary consideration of the elements and discussing the factual circumstances of the case. On appeal, the BIA endorsed the Immigration Judge's "particularly serious crime" analysis and similarly failed to discuss the nature of the offense. JA 85–86 (citing *N-A-M-*, 24 I. & N. at 342 and referencing the Immigration Judge's discussion of the presentencing report).

This analysis constituted legal error. In *Luziga*, we reviewed an indistinguishable agency adjudication and vacated and remanded on identical grounds. *See* 937 F.3d at 252–54, 257. Luziga, like Farooq, was convicted of wire fraud in violation of 18 U.S.C.

11

§ 1343.[5] *Id.* at 248. The Immigration Judge in Luziga's case similarly focused only on the facts of his conviction when denying statutory withholding. *Id.* at 249. After Luziga appealed, the BIA similarly affirmed the Immigration Judge's statutory withholding determination and parroted the Immigration Judge's review of the facts. *Id.* at 250. Just like in this case, rather than first considering the elements of wire fraud, the BIA "described a hybrid of the elements and facts" when reviewing the conviction. *Id.* at 254.

In vacating the agency's decision in *Luziga*, we explained that "[t]o the extent that the BIA decided that the Immigration Judge correctly applied the proper legal standard for the particularly serious crime determination, it erred." *Id.* We rejected the agency's hybrid approach of blending the steps and analyzing the facts without first considering the nature of the crime:

> The BIA's failure to correctly apply its own precedent[, *N-A-M-*,] for the particularly serious crime determination, to which we have consistently deferred, requires remand for 'appropriate consideration.' . . . On remand, the agency should first determine whether the elements of Luziga's offense potentially fall within the ambit of a particularly serious crime. Only then may it proceed to consider the facts and circumstances particular to Luziga's case.

*Id.* at 248, 254–55 (internal citation omitted). Thus, "compliance with *In re N-A-M-* required more than a mere 'acknowledge[ment]'; it required the actual undertaking of the necessary evaluation devoid of any legal error." *Ojo v. Garland*, 25 F.4th 152, 168 (2d Cir. 2022) (citing *Luziga*, 937 F.3d at 254). Here, both parties agree that *Luziga* compels our decision since the agency did not apply step one of the *N-A-M-* framework. *Compare*

---

[5] Luziga was also convicted of conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1343, 1349. *Luziga*, 937 F.3d at 248.

Pet'r Br. at 7 ("The BIA made the same mistake [as in *Luziga*] here; it affirmed the Immigration Judge's denial of withholding even though neither the Immigration Judge nor the BIA first considered whether the elements of wire fraud placed it potentially within the scope of a particularly serious crime."), *with* Resp. Br. at 26 (acknowledging that "Mr. Farooq is correct that the agency did not expressly reference the elements of 18 U.S.C. § 1343"). Thus, remand is warranted.

### B. Remand is not futile because the agency can reach a different conclusion as a matter of law.

Although the Government concedes error in the *N-A-M-* analysis, it suggests that remand "would be an exercise in futility" because the BIA "recently concluded that the inchoate offenses applicable to 18 U.S.C. § 1343 [wire fraud], specifically, attempting or conspiring to commit § 1343, falls [*sic*] within the 'ambit' of a particularly serious crime under the first step of *Matter of N-A-M-*." Resp. Br. at 26 (citing *In re F-R-A-*, 28 I. & N. Dec. 460, 468 (BIA 2022)). In *F-R-A-*, the BIA held that the nature of the petitioner's conviction—the inchoate offense of attempting or conspiring to commit wire fraud in violation of §§ 1343, 1349—brought it within the ambit of a particularly serious crime. 28 I. & N. Dec. at 468.

The Government reasons that because "the Board concluded that these inchoate offenses fall within the 'ambit,' there is only one possible disposition of Farooq's case on remand—that his completed offense under 18 U.S.C. § 1343 also falls within the "ambit" of a particularly serious crime. Resp. Br. at 26 (citing 8 C.F.R. § 1003.10) (quoting *Ricketts v. Att'y Gen. of U.S.*, 955 F.3d 348, 351 (3d Cir. 2020) where we recognized that

13

"remand for further agency action is unnecessary when 'only one disposition is possible as a matter of law.'")

However, it would be inconsistent with our precedent in *Luziga* to allow the agency to fail to consider the elements of the crime in reaching its conclusion. 937 F.3d at 254–55 (holding the "BIA's failure to correctly apply its own precedent for the particularly serious crime determination" was reversible error). The agency's failure to apply *In re N-A-M-* without a cogent explanation is arbitrary. *See Cruz v. Att'y Gen. of U.S.*, 452 F.3d 240, 250 (3d Cir. 2006) ("Where there is a consistent pattern of administrative decisions on a given issue, we would expect the BIA to conform to that pattern or explain its departure from it."). "Although an agency can change or adapt its policies, it acts arbitrarily if it departs from its established precedents without 'announcing a principled reason' for the departure." *Johnson v. Ashcroft*, 286 F.3d 696, 700 (3d Cir. 2002) (*quoting Fertilizer Inst. v. Browner*, 163 F.3d 774, 778 (3d Cir. 1998)); *see also Saleh v. Sessions*, 756 F. App'x 502, 508 (6th Cir. 2018) (citing *Hamama v. I.N.S.*, 78 F.3d 233, 239 (6th Cir. 1996)) (observing that the BIA's interpretation and application of its "particularly serious crime" framework cannot be upheld if it is arbitrary).

Lastly, even if *all* wire fraud cases necessarily fall within the ambit of a "particularly serious crime," at step two the BIA must consider the specifics of the respondent's crime to determine whether it is particularly serious *in light of* the general elements of the crime. *See N-A-M-*, 28 I. & N. at 342 ("[O]nce the elements of the offense are examined and found to potentially bring the offense within the ambit of a particularly serious crime, all reliable information may be considered in making a particularly serious crime

14

determination[.]"); *F-R-A-*, 28 I. & N. at 468 (same).  The BIA's actions in *N-A-M-* high-light this holding.  Even though *N-A-M-* stated "that the respondent's offense is a particu-larly serious crime based solely on its elements," the BIA nonetheless examined the indi-vidualized characteristics of the offense, including the fact that the offense was a crime against a person, that the respondent was required to register as a sex offender, and the statement in support of the warrantless arrest describing the nature of the respondent's crime.  28 I. & N. at 342.

It follows that we cannot simply supply the legal determination for the agency at step one and then engraft it onto the agency's preexisting factual analysis at step two. *Luziga*, 937 F.3d at 254–55.  We cannot reasonably determine that, as a matter of law, the BIA's failure to consider the elements of the crime at step one would have *no* effect on step two of the analysis.  *Ricketts*, 955 F.3d at 352 (recognizing that the remand futility doctrine applies only when "the BIA[,] on remand[,] would be *unable as a matter of law* to grant the relief sought") (emphasis added); *accord K.S. v. Att'y Gen. of U.S.*, 2022 WL 39868, at *4 (3d Cir. Jan. 5, 2022) (rejecting remand futility argument, as "[t]here is nothing in the record that would suggest [a] high probability" that the BIA's error "did not affect the outcome of the case").  Because the agency could grant Farooq relief on re-mand, the "remand futility doctrine" does not govern.  *See Nbaye v. Att'y Gen. of U.S.*, 665 F.3d 57, 60 (3d Cir. 2011).

## IV. CONCLUSION

For the foregoing reasons, we grant the petition and remand the case to the BIA. On remand, the agency should first determine whether the elements of Farooq's offense

15

potentially fall within the ambit of a particularly serious crime. Only then may it proceed

to consider the facts and circumstances particular to Farooq's case.